**UNITED STATES**

v.

**Clifford L. BISSER, 220 04 2346, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 88 0280.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 18 Sept. 1987.

Decided 15 Nov. 1988.

LCDR L. Saccoccio, JAGC, USN, Appellate Defense Counsel.

LT J.L. Staley, JAGC, USNR, Appellate Defense Counsel.

LT Robert A. Kemins, JAGC, USNR, Appellate Government Counsel.

Before RILEY, McLERAN and MIELCZARSKI, JJ.

RILEY, Senior Judge:

Pursuant to his pleas, appellant was convicted by a General Court–Martial (judge alone) of three specifications of missing movement through design and two specifications of disobeying an order from a noncommissioned officer in violation of Articles 87 and 91, respectively, of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 887, 891. He was sentenced to confinement for seven months, forfeiture of $200.00 pay per month for seven months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged except to suspend for twelve months all confinement in excess of six months, and forfeitures in excess of $200.00 pay per month for six months, as required by virtue of a pretrial agreement.

Appellant was assigned to Marine Helicopter Squadron 264. 2d Marine Aircraft Wing, Fleet Marine Force, Atlantic, stationed at Marine Corps Air Station, New River, Jacksonville, North Carolina. The squadron was scheduled to deploy onto the USS NASSAU (LHA–4) beginning in the early part of August 1987. For purposes of the deployment, the squadron was split into three separate units: the advance party, the main body, and the fly-on movement. Each unit deployed to the NASSAU separately and on different dates. The advance party was transported by bus to the ship in Norfolk, Virginia, on 8 August 1987. The main body followed the same procedure on 10 August 1987. The ship then moved to Morehead City, North Carolina, and the remaining element of the squadron flew on board at that location on 14 August 1987. These separate units reassembled as one squadron upon arrival on board the ship. Appellant was originally assigned to the advance party. He intentionally missed the movement of that unit, however, and was then ordered by his noncommissioned officer-in-charge, Staff Sergeant Gamble, to deploy with the main body—which deployment he also intentionally missed. Finally, the appellant was ordered to deploy with the fly-on unit. He intentionally missed that movement also. Before this Court, he assigns two errors. First, he contends that his three separate convictions for missing movement should be consolidated into one single specification because, ultimately, he missed only the movement of his squadron. Second, he argues that his convictions of disobeying the lawful orders of a noncommissioned officer should be dismissed as being multiplicious with his convictions for missing the main body and the fly-on movements.

■ The first issue presented is whether appellant can properly be convicted of missing three movements under the facts of this case. Appellant contends that the charging authority and the military judge in this case "stretched the meaning of the word 'unit' to an unreasonable degree," and he argues that it is the movement of the squadron as a whole that is contemplated by Article 87, UCMJ. We disagree.

Paragraph 11(c)(2)(a) of Part IV of the Manual for Courts–Martial, United States, 1984 (M.C.M.) provides in pertinent part that

[t]he word "unit" is not limited to any specific technical category such as those listed in a table of organization and equipment, but also includes units which are created before the movement with the intention that they have organizational continuity upon arrival at the destination regardless of their technical designation and units intended to be disbanded upon arrival at their destination.

In this case, Helicopter Squadron 264 was split into three separate "units" for purposes of deploying onto the USS NASSAU. Each unit was created for the purposes of the deployment, each deployed at a different time and each had different missions and responsibilities; the advance party was responsible for preparing the ship to receive the squadron aircraft, the main body boarded the ground personnel, and the fly-on unit was responsible for boarding the aircraft and aviation personnel. While it is true that the end result of the three separate troop deployments was the movement of appellant's squadron as a whole onto the USS NASSAU, that fact does not rob the commanding officer's tactical designation of the three separate units of its inherent legal significance. Importantly, this is recognized in the explanation to Article 87 in the M.C.M. which specifically foresees and provides for the splitting of traditional organizational units into different and perhaps smaller ones in order to accomodate the realities of military warfare. *See also United States v. Johnson*, 3 U.S.C.M.A. 174, 11 C.M.R. 174 (1953). To accept the appellant's argument in this case would be to ignore the military reality that the ability to split forces can be crucial to the success or failure of a mission, and would be contrary to the clear intent of Article 87 that the term "unit" be flexible enough to embrace differing combat situations. We will affirm three separate missing movements through design.

■ Appellant's second assignment of error raises the issue of whether his convic-

tions for willfully disobeying the orders of a superior noncommissioned officer to move with the main body and then the fly-on units are multiplicious with those for missing the movements themselves. Appellant contends that the convictions are multiplicious because the elements of the orders offenses are "fairly embraced" in the factual allegations of the missing movement offenses and established by evidence introduced at trial. *See United States v. Baker*, 14 M.J. 361 (C.M.A.1983); *United States v. Williams*, 18 U.S.C.M.A. 78, 39 C.M.R. 78 (1968). He asks that this Court approve only the "ultimate offense" of missing movement. *See United States v. Quarles*, 1 M.J. 231 (C.M.A.1975). Government counsel, on the other hand, argues that the orders given to the appellant in this case were proper and that the convictions can stand separate from the missing movement convictions because the orders were not given in an effort to escalate the maximum punishment appellant faced at trial. The Government further cites as settled law the principle that "a superior [petty] officer may, by supporting a routine duty with the full authority of his office, 'lift it above the common ruck'" and thus remove the failure to perform it from within the ambit of the Article 87 offense. *See United States v. Pettersen*, 17 M.J. 69, 72 (C.M.A.1983), quoting *United States v. Loos*, 4 U.S.C.M.A. 478, 480–81, 16 C.M.R. 52, 54–55 (1954).

In *Pettersen*, the Court of Military Appeals held that an accused who was in an unauthorized absence status when he refused an order to return to his duty station, could be convicted and punished separately for both disobeying the order and unauthorized absence where there was no evidence to show that the order was issued for the purpose of increasing the criminal liability of the accused's conduct. 17 M.J. at 72. While the Court noted its concern about using orders as a vehicle to increase punishment for failure to perform normal duties, it stressed that where the accused's direct defiance of the order "strikes at the very essence of military order and disci-

pline," the defiance of the order becomes the "ultimate offense" which is separately chargeable and punishable from the non-performance of the act which forms the basis of the order. 17 M.J. at 72. Thus, military commanders are able to issue orders to lift otherwise routine duties "above the common ruck" where the issuance of the order is motivated by the desire to maintain command discipline rather than the desire to increase the potential punishment for failing to perform the act ordered. *United States v. Landwehr*, 18 M.J. 355 (C.M.A.1984); *United States v. Pettersen*, *supra; United States v. Loos*, 4 U.S.C.M.A. 478, 16 C.M.R. 52 (1954); *United States v. Caton*, 23 M.J. 691 (A.F.C.M.R.1986).

Under the circumstances of this case, we agree with the appellant that the convictions under Articles 87 and 91, are multiplicious for both findings and sentencing purposes. Implicit in the decision in *Pettersen* and its progeny is the thought that a *pre-existing* duty can be elevated above a routine category by the issuance of an order to perform that duty where the order is not motivated by a desire to increase punishment. As the Court noted in *Pettersen*, "the Manual contemplates the giving of an order which relates to a military duty presumably already imposed by some other source of authority, and which is given under circumstances which negate the motive of increasing punishment for not performing the pre-existing duty." 17 M.J. at 71. In this case, the orders given to the appellant by Staff Sergeant Gamble did not relate to a pre-existing duty; rather, the orders themselves created the duty to move. Upon missing the movement of the advance party, the appellant, while remaining a member of Helicopter Squadron 264, did not have a specific duty to move with either the main body or the fly-on unit until it was explained to him that he was being assigned to and ordered to move with the main body and, later, with the fly-on unit. Unlike the appellant in *Pettersen*, Private First Class Bisser's duty to make the main body and eventually, the fly-on movement

was not pre-existing in that he was not even assigned to those units until after he missed the first and then the second movements.[1] Here, the orders violation and the missing movement were completed at the same time and accomplished by the same single act. *Cf. United States v. Shanahan,* 16 M.J. 654 (A.F.C.M.R.) *pet. denied,* 17 M.J. 433 (C.M.A.1983) (Where the court relied in part on the fact that the orders violation and the Article 86, 10 U.S.C. § 886 offenses were completed separately in both time and action.) As such, we find that the ultimate offense committed by the appellant under these circumstances is missing movement. *See generally United States v. Quarles,* 1 M.J. 231 (C.M.A.1975); *United States v. Wartsbaugh,* 21 U.S.C.M.A. 535, 45 C.M.R. 309 (1972); *United States v. Bratcher,* 18 U.S.C.M.A. 125, 39 C.M.R. 125 (1969).

Accordingly, the findings of guilty to Charge II and both of its specifications are set aside. Charge II and the specifications thereunder are dismissed. The remaining findings of guilty to Charge I and its specifications are affirmed. Upon reassessment, the original sentence as approved on review below is affirmed. *United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

Judge MCLERAN and Judge MIELCZARSKI concur.

---

1. This conclusion is supported by our resolution of the appellant's first assignment of error. Because the advance party, the main body, and the fly-on segments of the deployment all constituted separate units for the purposes of Article 87, UCMJ, it is necessary, in order to support a prosecution, that the appellant have actual knowledge of his duty to move with each individual unit. This did not happen until appellant was assigned to and ordered to move with the particular unit.