## UNITED STATES

v.

### Airman Darian G. McCOY, FR 244–45–6778, United States Air Force.

### ACM 28923.

U.S. Air Force Court of Military Review.

Sentence Adjudged 16 Aug. 1990.

Decided 11 April 1991.

Appellate Counsel for the Appellant: Lieutenant Colonel Jeffrey R. Owens and Lieutenant Colonel Francis T. Lacey, USAFR.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr. and Lieutenant Colonel Brenda J. Hollis.

Before LEONARD, RIVES and JAMES Appellate Military Judges.

## OPINION OF THE COURT

RIVES, Judge:

Airman Darian McCoy was given immunity to testify against Airman First Class Kenneth Conner. In a pretrial interview with the prosecutors, McCoy lied about his knowledge and use of drugs. He repeated those lies the next day at Conner's general court-martial. While he was properly convicted for the separate offenses of making a false statement and perjury, we find that those offenses merge for sentencing purposes.

McCoy used methamphetamine about seven times from August 1989 through January 1990. On several occasions, he used the drug with Conner. In March 1990, McCoy confessed to criminal investigators. The government granted testimonial immunity to compel McCoy's testimony at Conner's trial. On 29 May 1990, the trial counsel in Conner's case showed the grant of immunity to McCoy, who said he understood that the grant did not extend to any false statements, perjury, or false swearing.

On 30 May, the grant of immunity—which protected pretrial interviews as well as testimony at trial—was again explained to McCoy by Conner's trial counsel. At that time, McCoy denied any knowledge of illicit drugs. He said his sworn statement to investigators had been false. On 31 May, McCoy testified at Conner's court-martial, repeating the information he had told the trial counsel on 30 May.

McCoy was subsequently prosecuted for his own use of drugs, for his false state-

ment to the trial counsel, and for his perjury at Conner's trial. Articles 112a, 107, and 131, UCMJ, 10 U.S.C. §§ 912a, 907, 931. Pursuant to his pleas, he was convicted of all offenses. The convening authority approved his sentence to a bad conduct discharge, confinement for 2 years, forfeitures of $100.00 of his pay per month for 24 months and reduction to the pay grade of E–1.

Our independent review of this case raised the issue of multiplicity as to the false statement and perjury charges. We pursue this area with some reluctance. On the one hand, multiplicity is a very murky subject; if we could avoid it, we would.[1] However, we cannot ignore an error that "materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a).

■ Embodied in the appellant's misconduct is an "ultimate offense." *See United States v. Peaches*, 25 M.J. 364, 366 (C.M.A. 1987); *United States v. Zubco*, 18 M.J. 378, 383 (C.M.A.1984). McCoy lied to the trial counsel and again at Conner's trial, with the clear intent to "obstruct the due administration of justice." MCM, Part IV, paragraph 96b(3) (1984). Both lies could have been charged as that solitary offense. However, the government did act within permissible bounds when the lies were charged separately as a false statement and perjury. *See United States v. Ridgeway*, 19 M.J. 681 (A.F.C.M.R.1984); *United States v. Bisser*, 27 M.J. 692 (N.M.C.M.R. 1988).

■ We do not find multiplicity for findings. *See* R.C.M. 307(c)(4), Discussion; *United States v. Stottlemire*, 28 M.J. 477 (C.M.A.1989); *United States v. Baker*, 14

M.J. 361 (C.M.A.1983). The charges are based on separate statutory provisions designed to protect different societal norms, they do not require inconsistent findings of fact, and they have separate elements of proof. *United States v. Crowe*, 30 M.J. 1144, 1146 (A.F.C.M.R.1990). McCoy's separate lies can be reflected in his record as separate offenses.

■ The false statement and perjury charges are multiplicious for sentencing. The decision to charge the ultimate crime of obstructing justice as two separate offenses cannot serve as a punishment multiplier.

We view the grant of immunity as a watershed event. But for the grant of immunity, McCoy could have relied on the Fifth Amendment and Article 31, 10 U.S.C. § 831 and avoided any obligation to speak. The grant of immunity enabled the prosecution to compel his testimony. Once ordered to speak, he did not have the right to lie to the trial counsel or to commit perjury with impunity. Under the facts of this case, however, his repeated lies amount to but one offense for punishment purposes.

The separate lies did not result from McCoy's volitional decision to speak to the trial counsel and to testify at Conner's trial. Rather, they followed his decision not to assist in the prosecution of his cohort. Given the grant of immunity, the trial counsel could and did order him to speak. McCoy lied to the trial counsel and then committed perjury. However, those separate lies flowed from a singular decision.[2] Accordingly, we view those lies as aspects of a "single transaction ... committed as the result of a single impulse or insistent flow of events with a like object or intent."

---

**1.** Senior Judge Cook expounded on the frustrations raised by multiplicity issues: "How trial practitioners can be expected to proceed in implementing the myriad, fickle rules propounded by this Court, in light of my Brothers' failure to follow even their own dictates, is beyond me!" *United States v. Zupancic*, 18 M.J. 387, 393 (C.M. A.1984) (Cook, Senior Judge, concurring in part and dissenting in part) (footnotes omitted).

**2.** McCoy's decision reminds us of the tale behind the title of Alex Hawkins' autobiography, *My Story (and I'm Sticking to It)* (1989). Haw-

kins arrived home after a very late night out to find his wife waiting for him. When she asked where he had been, he replied that he had arrived home early, found her asleep, and decided to go outside and enjoy the beautiful evening. He relaxed on the hammock and fell asleep under the stars. His wife responded that the story was nice, but she had taken the hammock down the previous week. Hawkins could only reply, "Well, that's my story and I'm sticking to it."

*Crowe, supra,* 30 M.J. at 1146; *see also* R.C.M. 1003(c)(1)(C), Discussion; *United States v. Weaver,* 20 U.S.C.M.A. 58, 42 C.M.R. 250 (1970).

Once the appellant lied about his drug knowledge and involvement, the potential punishment does not multiply each time he repeats the lies when, as here, he only spoke under orders from the prosecutor. While we approve separate convictions for the separate lies, the maximum punishment does not increase when McCoy told the same lies twice, each time after being ordered to talk. *See United States v. Coley,* 29 M.J. 734, 736 (A.F.C.M.R.1989).

We have considered whether this issue was waived, since no multiplicity motion was raised at the trial level. Sitting *en banc,* this Court has ruled that when an accused "fails to raise an issue of sentence multiplicity before the trial judge, the issue is waived *in the absence of plain error." United States v. Everstone,* 26 M.J. 795, 796 (A.F.C.M.R.1988) (emphasis added). The "plain error" must be obvious and substantial and it must also have an unfair prejudicial impact. *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A.1986).

We embrace the *Everstone* decision, but we caution that it must be read *in toto.* To repeat a quote often attributed to H.L. Mencken, "For every complex problem there is a simple solution ... and it is usually wrong." *Everstone* does not simply hold that failure to raise an issue of sentence multiplicity at trial waives the issue; it also requires the absence of plain error. The simple solution in this case would hold the multiplicity issue to be waived. But that result would be wrong.

Having decided the sentence multiplicity issue, plain error exists because the appellant suffered real prejudice. The military judge erroneously considered a maximum punishment of 15 rather than 10 years, and he punished McCoy for three rather than two separate offenses. There was a high probability that the error affected the sentence imposed at trial. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Cole,* 31 M.J. 270 (C.M.A.1990); *United*

*States v. Evans,* 28 M.J. 74, 76 (C.M.A. 1989).

Following our complete review of the record, the assignment of error and the government's reply thereto, we conclude that the findings are correct in law and fact. Our holding on the multiplicity issue causes us to reassess the sentence; in doing so, we will also consider the assigned error, in which the appellant urges that the sentence is unduly severe. Relying only on those matters properly before the military judge, we are satisfied that we can determine the sentence the court "would probably have adjudged if the error had not been committed at trial." *United States v. Peoples,* 29 M.J. 426, 427 (C.M.A.1990); *see United States v. Sales,* 22 M.J. 305 (C.M.A. 1986).

Reassessing the sentence, we approve only so much of the sentence as provides for a bad conduct discharge, confinement for 16 months, forfeiture of $100.00 pay per month for 16 months and reduction to the grade of E–1. Considering the entire record, the reassessed sentence is appropriate. The approved findings of guilty and the sentence, as modified, are

AFFIRMED.

Senior Judge LEONARD concurs.

JAMES, Judge, concurring in part and dissenting in part:

Once again I am invited "to descend ... into that inner circle of the Inferno where the damned endlessly debate multiplicity for sentencing," *United States v. Barnard,* 32 M.J. 530, 537 (A.F.C.M.R.1990), and this time I cannot decline the invitation. I agree with the majority that no error affects the findings in this case. I dissent from its conclusions about the sentence. I would not find multiplicity for sentencing, and I would affirm the findings and sentence as adjudged and approved.

First, I refuse to join the majority's use of the plain error exception to evade the otherwise necessary conclusion that the issue was waived by the failure of the appellant to object to separateness and to develop the facts at trial. "Plain error" is error

that is obvious and substantial, so serious that it affects the public perception of the reliability of the trial. *United States v. Fisher,* 21 M.J. 327 (C.M.A.1986). No one at trial or on appeal thought the issue was so clear: none even mentioned it. A diligent and attentive trial judge might be distracted long enough to commit plain error, but I would expect that "plain error" multiplicity between falsity offenses would have been noticed earlier in our 40–year history under the present code. Yet the majority cites not a single such decision. The "error" hardly seems plain to me. Therefore, I would regard the issue as waived under *United States v. Everstone,* 26 M.J. 795 (A.F.C.M.R.1988) (*en banc*), *pet. denied,* 27 M.J. 434 (C.M.A.1988). *See United States v. Flynn,* 28 M.J. 218, 221 (C.M.A.1989).

The majority does serious damage to an important precedent when it uses the "plain error" exception in *Everstone* as it does. I do not deny that the exception is there, but I disagree that a significant effect on sentence constitutes plain error for *Everstone's* purposes because if it does, *Everstone's* waiver can only be applied to cases in which there is *no* significant difference between the maximum sentence with and without multiplicity. Those are cases in which the error would be unlikely to have prejudicial effect. It hardly seems sound to me to think that our predecessors viewed no-prejudice multiplicity controversies as so important that they sat *en banc* to build a waiver. Only cases with a possibility of significant sentence variation warrant that kind of attention. By holding otherwise, the majority reads *Everstone* as meaningless and strips the value out of its waiver, I think contrary to logic and contrary to the evident intent in that decision.

Second, given that we are apparently deciding the issue for the first time, I would take a different approach to it. Rule for Courts–Martial 1003(c)(1)(C) states the present Executive, procedural rule on multiplicity. It is entitled to be followed (as far as it goes [1]) because it is an Executive prescription of procedure under Article 36, UCMJ, 10 U.S.C. sec. 836 (1988), which implements Executive prescriptions of maximum punishments under Article 56, UCMJ, 10 U.S.C. sec. 856 (1988).[2] It provides only the "separate elements" test of multiplicity. The majority concedes that the two falsities have separate elements, and so it concedes their separateness for sentencing under the President's rules. Thus, some other source of law must require the result that the majority reaches here.

Of course, there are entirely enough sources of law on multiplicity for sentencing to provide a semblance of support for virtually any position,[3] as some cynics say about scripture. One, *United States v. Burney,* 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971), would be useful here. It analyzed the "single transaction" model on which the majority relies, emphasizing the need for "more penetrating analysis" and (as I do below) the opportunity in that setting of the offender to reconsider his behavior before committing further misconduct.

In my view, the majority focuses on the wrong aspects of the events. First, Airman McCoy's *decision* to lie is not the crime. The crimes are the ensuing *behavior,* repeated despite an overnight interval in which to reflect. Criminal law punishes behavior, not decisions. Even the decision in a conspiracy to commit a crime remains unpunishable until there is an act. Con-

1. *See generally, United States v. Jones,* 23 M.J. 301 (C.M.A.1987).

2. *See generally, United States v. Baker,* 14 M.J. 361, 370–376 (C.M.A.1983) (Everett, C.J., concurring, and Cook, J., dissenting).

3. "The problem is not that there are insufficient tests for multiplicity; the problem is that there are so many." *United States v. Baker,* 14 M.J. 361, 372 (C.M.A.1983). One of my predecessors said of this unrewarding issue, "Once again we are asked to enter the labyrinth where a minotaur called multiplicity lurks." *United States v. Worline,* ACM 24316 (3 October 1984 unpublished). We do not wish to avoid our duty to deal with the minotaur, but I note that the issue has not improved since Judge Cook called it chaotic in *Baker,* 14 M.J. at 372, and we have been warned to stick to precedent regardless of intervening changes in the Manual. *United States v. Jones,* 23 M.J. 301 (C.M.A.1987).

versely, the several steps in a conspiracy and the object offense are separately punishable so long as each constitutes a separate crime: The conspiratorial agreement becomes punishable when the overt act occurs and remains separately punishable even when the object offense is commited and prosecuted in the same case. *See, e.g., United States v. Matias,* 21 M.J. 1002 (A.C. M.R.1986), *aff'd,* 25 M.J. 356 (C.M.A.1987), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1242, 99 L.Ed.2d 441 (1987). The criminal's ultimate objective does not shield him from punishment for each of the crimes he commits in its pursuit. Second, this is not a disobedience case, and it is not significant that the law's servants had to order Airman McCoy to do what society expects all to do freely. There is no suggestion that the orders were given successively solely in a malicious attempt to compound the punishment by twice inducing Airman McCoy to refrain from doing what the law requires. Indeed, the orders were only peripheral: Trial counsel ordered Airman McCoy "to cooperate in a pretrial interview," and the military judge directed him to respond to trial counsel's questions. Neither ordered Airman McCoy to tell the truth. That imperative is supplied by the law to all. Third, it is of no consequence that it might have been likely that having once lied, Airman McCoy would lie the second time. Predictability does not excuse criminality. Were it otherwise, an abuser of drugs would face only a single punishment for each in a series of uses, regardless of proven separation in time and place. Finally, a less committed criminal might easily have seen the light and chosen to tell the truth in court, just as a less committed drug user may desist and avoid successive punishments for successive uses. Our system depends on truthful testimony, and I will not so cynically ignore the perhaps naive belief that underlies law, that given a choice, most will obey the law, do their duty, and tell the truth. Airman McCoy had two chances to do so, but he didn't either time. I am unoffended that he might be separately punished for each.

I am more offended by the random appellate generosity that results when such a recurrent issue must be so subjectively assessed, when reasonable judges can see a legal issue so differently: The majority and I do not simply disagree, we disagree emphatically. I see separate times, separate places, different circumstances, different duties, and the majority concedes separate statutes and distinctive elements, yet the state of the law permits the majority to arrive at a completely different conclusion. Criminal law depends on predictability, the perception that a certain punishment is certain to follow each crime. The trial court should be allowed to adjudge sentences as society's representative in some confidence that the sentence adjudged will be executed. Appellate courts should not be so free as we are to disagree. The law should be more predictable, more empirical, and more logical. Like Judge Cook, I can find no one except the judiciary to blame for such a state of affairs. *See United States v. Baker,* 14 M.J. 361, 372 (C.M.A. (Cook, J., dissenting)).

Finally, I do not find the sentence inappropriate. Airman McCoy's record included a nonjudicial punishment for absence without leave in 1988, financial irresponsibility in February and March 1990, and rehabilitative efforts for use of marijuana in April 1990. It shows him to be, as his supervisor testified, "a sprinter," one who does well briefly and then back-slides. The same supervisor opined that Airman McCoy's rehabilitative potential was diminished by that characteristic. No doubt the military judge considered that Airman McCoy's abuse of methamphetamine for 6 months from August 1989 through January 1990 and his later falsity confirmed the supervisor's view and warranted the confinement adjudged in which to reflect. Nothing about the sentence was excessive, and I would affirm the findings and sentence as adjudged and approved.