**UNITED STATES, Appellee,**

v.

**Sergeant Perry A. MITCHELL, 265–17–0627, United States Army, Appellant.**

**ACMR 9100737.**

U.S. Army Court of Military Review.

22 June 1992.

For Appellant: Captain Mark L. Toole, JAGC, Captain Michael Huber, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Major G. Roderick Gillette, JAGC USAR (on brief).

Before JOHNSON, WERNER, and GRAVELLE, Appellate Military Judges.

### OPINION OF THE COURT

GRAVELLE, Judge:

Pursuant to mixed pleas, the appellant was convicted by a military judge sitting as a general court-martial of missing movement through design and two specifications of disobeying the orders of commissioned officers, in violation of Articles 87 and 90, Uniform Code of Military Justice, 10 U.S.C. §§ 887 and 890 (1982). The military judge dismissed one specification of disobedience of orders as multiplicious for findings with the remaining disobedience specification. The appellant was sentenced to a bad-conduct discharge, confinement for fifteen months and reduction to Private E1. The convening authority reduced the confinement to twelve months and otherwise approved the sentence.

The appellant asserts that the military judge's determination of the maximum punishment in this case was erroneous because the military judge held that the disobedience offense was the "ultimate offense" rather than the missing movement offense. We disagree.

I.

On 19 December 1990, the appellant's commander, learning that the appellant had made statements refusing to deploy to Saudi Arabia with his unit, read to the appellant an order to deploy with his unit. The following are the pertinent parts of that order:

MEMORANDUM FOR Sergeant Perry A. Mitchell, HHC 4th Bn, 18th Inf, APO NY 09091

SUBJECT: Order to Deploy to Persian Gulf

1. You are hereby ordered to deploy to Saudi Arabia with Headquarters Company, 4th Battalion, 18th Infantry when the unit is required to do so in late December 1990.

2. Through your words and actions you have indicated to me that you do not intend to deploy to the Persian Gulf with Headquarters Company, 4th Battalion, 18th Infantry. You have indicated your intent to abandon your military mission.

. . . .

4. You are advised that failure to obey this order will constitute a violation of U.C.M.J. Article 90 (Disobeying the Lawful Order of a Superior Commissioned Officer) and U.C.M.J. Article 87 (Missing Movement). You will acknowledge receipt of this order by signing the below acknowledgment.

> [/s/ Kent D. Burstein]
> KENT D. BURSTEIN
> CPT, IN
> Commanding

I acknowledge receipt of the above stated order on *19* Dec. 1990.

> [/s/ Perry A. Mitchell]
> PERRY A. MITCHELL
> SGT, U.S. Army

When the company deployed on 24 December, the appellant refused to board the bus that was to take him to the airport. He thereby missed the movement of his unit to Saudi Arabia. He was convicted of wilfully disobeying the lawful command of Captain Burstein "to deploy to Saudi Arabia with Headquarters Company, 4th Battalion, 18th Infantry on or about 24 December." He was also charged with, pleaded guilty to, and was convicted of missing, through design, the movement of this same unit to Saudi Arabia on or about 24 December.

At trial, the appellant asked the military judge to rule that the two offenses were multiplicious for findings and sentencing, and further asked that the military judge rule that the "ultimate offense" was missing movement, thereby limiting the maximum confinement to two years, rather than five years for disobeying an officer's order. The military judge found, *inter alia:*

I find that the accused was aware prior to 19 December 1990 that his unit would deploy to Southwest Asia;

Prior to the 19th of December the accused had expressed his unwillingness to go [to Saudi Arabia] to his chain-of-command;

Although the accused was not aware of the exact date of the deployment he was aware that [he] would be deploying;

On the 19th of December 1990 he was given an order by Captain Burnstein [sic] to deploy with his unit to Saudi Arabia;

. . . .

The orders were lawful and they were direct personal orders given to the accused, and they were not given for the purpose of increasing punishment;

. . . .

The duty to deploy to Southwest Asia is not a routine duty.

I find that the accused's repeated refusals to deploy in the face of exhortations from his Command Sergeant Major, Company Commander and the Battalion

Commander was marked by defiance, although in a respectful manner. There was no indication that Sergeant Mitchell was ever in any way disrespectful in his refusals to deploy.

I find that the purpose of the [order was] to motivate Sergeant Mitchell to deploy with his unit,—Sergeant Mitchell being the NBC NCO for his unit, and as such an important member of the unit, which was deploying to an area where the use of chemical weapons was a strong possibility.[1]

. . . .

I find that the specification of Charge II, which alleges missing movement, is not the ultimate offense, but is a separate offense for findings; however, again, it is multiplicious with the Specification of Charge I for sentencing purposes.

We find that the military judge's findings of fact are supported by the evidence of record. His conclusions are at issue here.

## II.

▇▇▇ Although not directly raised as an error on appeal, our determination of the "ultimate offense" in this case necessarily requires that we explore the troublesome subject of multiplicity at the outset. *See generally United States v. McCoy,* 32 M.J. 906 (A.F.C.M.R.), *pet. denied,* 33 M.J. 489 (C.M.A.1991). Our brothers of the Navy–Marine Corps Court of Military Review in 1988 decided a case similar in many respects to the case before us. *United States v. Bisser,* 27 M.J. 692 (N.M.C.M.R. 1988). Under somewhat similar facts, that court found that the two offenses were multiplicious for findings purposes. We agree with that court's reasoning as to multiplicity. Here, even though the commander's order was given several days before the violation of that order, the violation of the order and missing the unit's movement were committed at the same

---

1. The government presented evidence that the appellant, as NBC NCO (nuclear, biological and chemical noncommissioned officer), was responsible for advising his commander on all matters pertaining to chemical warfare, including defensive matters in a chemical warfare environment. He was responsible (and would have been responsible in Saudi Arabia) for the chemical protective gear of more than three hundred soldiers in his infantry company.

time and accomplished by the same single act. We therefore hold that the two offenses were multiplicious for findings purposes. Because the military judge treated the two offenses as multiplicious for sentencing, we perceive no harm to the appellant in this case resulting from the military judge's ruling on multiplicity. We will consolidate the two offenses in our decretal paragraph. *United States v. Harclerode,* 17 M.J. 981 (A.C.M.R.1984).

■ "Disobedience of an order which has its sole object the attainment of some private end, or which is given for the sole purpose of increasing the penalty for an offense which it is expected the accused may commit, is not punishable under [Article 90]." Manual for Courts–Martial, United States, 1984, Part IV, para. 14(c)(2)(a)(iii) [hereinafter MCM]. "The order must be a specific mandate to do or not to do a specific act. An exhortation to "obey the law" or to perform one's military duty does not constitute an order under this article." *Id.,* para. 14(c)(2)(d). The rationale for this latter provision is that an order to "obey the law" cannot have validity beyond the limit of the ultimate offense committed. *United States v. Bratcher,* 39 C.M.R. 125, 128 (C.M.A.1969); *United States v. Quarles,* 1 M.J. 231, 232 (C.M.A.1975). The giving of an order cannot be used to escalate the punishment to which the accused would otherwise be subject for the ultimate offense involved. *Quarles,* 1 M.J. 231. However, "a superior commissioned officer may, by supporting a routine duty with the full authority of his office, lift it above the common ruck and thus remove the failure to perform it from within the ambit of [a lesser offense]." *United States v. Loos,* 16 C.M.R. 52, 54–55 (C.M.A.1954); *United States v. Petterson,* 17 M.J. 69, 72 (C.M.A. 1983).[2]

■ Thus, in determining whether or not the order is the "ultimate offense," a number of factors must be examined: the in-

tent of the officer in giving the order; whether the order was merely an exhortation to obey the law; whether there was a preexisting duty; whether there has been an "express defiance" of military authority; and whether the order was issued in the performance of a proper military function. *Pettersen,* 17 M.J. 69.

■ We find as a matter of fact in this case that the company commander was not attempting to increase the potential punishment for the appellant's nondeployment. Rather, the commander, aware that the appellant's chemical warfare specialty and skills were critical to his unit's safety in an environment with a high probability of chemical warfare, was attempting to motivate the appellant to voluntarily deploy with his unit. In attempting to do so, the commander was utilizing the full authority of his office. We find that the order was more than a mere exhortation to obey the law. Unlike the situation in *United States v. Bisser,* the appellant had been informed in late November 1990 that his unit would deploy to Southwest Asia with all able-bodied members; that is, he had a preexisting duty to deploy with his unit at the time the company commander gave him the order to deploy. Further, there is ample evidence that the appellant had repeatedly expressed his intent to defy the movement orders.

We hold that under the circumstances presented here, the "ultimate offense" was the disobedience of the order to deploy and that therefore the maximum possible confinement was based on that offense. Therefore, the military judge was correct in determining that the maximum possible punishment of confinement in this case was five years.

■ However, even assuming, *arguendo,* that the maximum punishment was only two years for missing movement, we find no prejudice to the appellant as to the

---

2. The use of the word "routine" as it relates to the duty may be ill-advised. Some cases discussing the "ultimate offense" issue seem to require that the duty be routine, while others seem to say that the duty must not be routine. *Compare, e.g., Pettersen* and *Loos* with *United*

*States v. Peaches,* 25 M.J. 364, 366 (C.M.A.1987). We interpret the word in a very broad sense to mean simply "military duty" and do not believe that categorizing a duty as "routine" determines the "ultimate offense" issue.

sentence. Under all the circumstances of this case, we are convinced that the adjudged sentence would have been substantially the same.

The issue of sentence appropriateness personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), is without merit.

Specification 2 of Charge I and the Specification of Charge II are consolidated by inserting at the end of Specification 2 of Charge I the words "and did thereby miss the movement of his unit to the Kingdom of Saudi Arabia through design." The findings of guilty of the specification, as so amended, and Charge I (redesignated the Charge) is affirmed. The sentence is affirmed.

Senior Judge JOHNSON and Judge WERNER concur.