**UNITED STATES**

v.

**Sergeant Steve M. HANCOCK, FR510–68–5770, United States Air Force.**

**ACM 29539.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 31 July 1991.

Decided 25 Aug. 1993.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens, Major Alice M. Kottmyer, and Captain Ursula P. Moul.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Major Jeffrey C. Lindquist, Major Paul H. Blackwell, Jr., and Major John H. Kongable.

Before SNYDER, JAMES and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

This is a sad case of marital discord that repeatedly escalated to physical violence. Sergeant Hancock struck his wife on five occasions over a period of about a year and choked her on another occasion. About a week before he was to be tried by court-martial for these assaults he again struck her and threatened to kill her. He was convicted of seven specifications alleging assault and battery and one specification of communicating a threat.[1] He argues before us that his defense counsel at trial was ineffective and that the charge of communicating a threat was multiplicious for

findings with the related assault charge. We find no error and affirm.

## EFFECTIVENESS OF COUNSEL

Sergeant Hancock raises a variety of complaints about the performance of his defense counsel at trial.[2] It is clear that an accused is entitled to effective representation by counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). Before any relief is warranted on appellate review because of ineffective representation, an appellant must show his counsel's performance was deficient and that the deficient performance prejudiced the outcome of the case.

Sergeant Hancock avers his defense counsel failed to properly explain his options as to counsel and pleas and pressured him into pleading guilty and into not testifying on his own behalf. He also complains that his counsel failed to advise him about the possibility of entering into a pretrial agreement. He further complains that his defense counsel failed to adequately investigate the case and that he erred in examining a defense expert witness about her qualifications. He complains that his counsel failed to move that the military judge find the charge of communicating a threat to be multiplicious for sentencing with a related assault charge, that he failed to raise an available defense of self-defense, that he failed to object to a physi-

1. Articles 128, 134, UCMJ, 10 U.S.C. §§ 928, 934; MCM, Part IV, paragraphs 54, 110 (1984).

2. Much of Sergeant Hancock's dissatisfaction with his counsel stems from his beliefs that his counsel failed to spend enough time with him preparing for trial and that his counsel was unduly friendly with the assistant trial counsel. These complaints merged in Sergeant Hancock's description in his post-trial affidavit of two instances where his defense counsel cut short trial preparation sessions with Sergeant Hancock in order to play racquetball with the assistant trial counsel. There seems to be a perpetual need to remind all the participants in the criminal justice process that perceptions are vitally important to maintaining confidence in the integrity of the system. In particular, counsel must scru-

pulously avoid giving their clients any reason to believe their loyalties may be divided. Sergeant Hancock complains that his defense counsel and the assistant trial counsel displayed immature behavior at his Article 32 investigation by throwing paper clips at each other, that they talked constantly about going on a skiing trip together, and that they played tennis or racquetball together every day. We do not favor a "no fraternization" rule between prosecutors and defense counsel, but counsel and their supervisors have a duty to be vigilant to avoid creating perceptions of undue familiarity that undermine an accused's confidence that he is receiving the loyal and vigorous representation to which he is entitled. The only rule that should be necessary is one of discretion.

cian's testimony concerning the victim's statement to the physician about how her injuries occurred (i.e., assaults by Sergeant Hancock), and that he failed to object to testimony by an expert witness during sentencing proceedings about a "battered wife syndrome."

Sergeant Hancock's trial defense counsel has provided an affidavit in which he states that he fully advised Sergeant Hancock concerning his rights as to counsel, pleas, and testifying on his own behalf, and that Sergeant Hancock freely decided to enter mixed pleas and not to testify on the merits. He advised Sergeant Hancock about pretrial agreements in general but did not pursue the subject after Sergeant Hancock decided to enter mixed pleas. Defense counsel avers he was adequately prepared for trial, having met with Sergeant Hancock on nine occasions, having interviewed prospective defense witnesses on two occasions, and having represented Sergeant Hancock during his Article 32 investigation. The confusion over his examination of the expert witness concerning her membership in a professional association was due to her misunderstanding of the question, not to any mistake on his part.

There is considerable corroboration of defense counsel's version of the facts. Defense counsel provided an interview checklist on which Sergeant Hancock acknowledged he had been advised on a number of subjects, including his rights to counsel, pleas, and his various options to testify on the findings and on sentencing. The expert witness' curriculum vitae demonstrates that the witness was confused in her answer about her membership in a professional association; the error was not counsel's. The military judge ascertained on the record that Sergeant Hancock understood his rights as to pleas and counsel, and that he was satisfied with his defense counsel.

Sergeant Hancock entered guilty pleas to three specifications of assault consummated by a battery, excepting certain language from each of them, and not guilty to communicating a threat, disorderly conduct, and four other specifications of assault consummated by a battery. During his colloquy with the military judge he also objected to certain language in the stipulation of fact submitted in connection with his guilty pleas, and this language was deleted. His active participation in this portion of his trial belies his claims that he was ignorant of his rights and that he was coerced by his counsel into passive acquiescence in his fate. Defense counsel's affidavit is clear and positive. It is corroborated by the available evidence. We find that it is more credible than Sergeant Hancock's complaints on these matters.

■ Sergeant Hancock's complaint that his counsel failed to raise an available defense of self-defense is without merit. Viewed in the light most favorable to the defense, the evidence shows Sergeant Hancock and his wife engaged in mutual affrays. The defense of self-defense is not available to mutual combatants. *United States v. Wilhelm*, 36 M.J. 891 (A.F.C.M.R. 1993); R.C.M. 916(e)(4).

■ Finally, we find no error in defense counsel's failure to object to certain evidence. The testimony of the physician as to what the victim told him about the cause of her injuries was clearly admissible under the exception to the hearsay rule for statements made for purposes of medical diagnosis or treatment. *United States v. Ortiz*, 34 M.J. 831 (A.F.C.M.R.1992); Mil. R.Evid. 803(4). Sergeant Hancock also complains this statement contained uncharged misconduct, since the physician stated the victim said Sergeant Hancock struck her that day and the previous day. Sergeant Hancock was charged with striking her that day and 5 days previously, but not the previous day. None of the trial participants argued at any time that there was an uncharged assault on the previous day. The physician also testified that the victim's "old" bruises appeared to him to be about 72 hours old. We conclude there was no significant risk the members found there was another uncharged assault by Sergeant Hancock on his wife the previous day. It is more likely all the participants treated this variance in the date of the reported prior assault as part of the fog of

imprecision that is endemic to hearsay testimony about long-past conversations. We conclude the defense counsel did not err by failing to object to this testimony as uncharged misconduct, and that in any event it is unlikely that it created any prejudice to Sergeant Hancock.

■ Similarly, we find no error in defense counsel's failure to object to the testimony of an expert witness during sentencing about a "battered wife syndrome." The witness was a counselor with extensive experience in treating battered wives. She described a three-phase "typical" behavioral response by wives to being beaten repeatedly by their husbands. We conclude this testimony was proper "victim impact" evidence under R.C.M. 1001(b)(4). *See United States v. Stark,* 30 M.J. 328 (C.M.A.1990).

The evidence against Sergeant Hancock was very strong. Mrs. Hancock testified concerning all but one of the charged offenses; another witness described that one. There were also four other witnesses, each of whom saw one of the assaults. Sergeant Hancock admitted one of the assaults in a written response to a letter of reprimand. The security police were called to the scene of five of the incidents, and twice photographs were taken of the victim's injuries after she received medical treatment. No legal defense was available. Any expectation by Sergeant Hancock that he could avoid conviction by pleading not guilty and denying under oath that any of the offenses occurred was unrealistic.

The defense strategy in these circumstances could only be one of damage control, and it seems to have succeeded reasonably well. Sergeant Hancock was acquitted on a charge of disorderly conduct. The sentence imposed was relatively light: no punitive discharge or forfeitures were adjudged, Sergeant Hancock was reduced only one grade, and the confinement adjudged was less than a third of the maximum authorized. We find no deficiency in defense counsel's performance in these circumstances.

## MULTIPLICITY

■ Sergeant Hancock next argues the charge of communicating a threat and a related charge of assault consummated by a battery were multiplicious for sentencing. Both charges arose from an incident on 22 May 1991, about a week before Sergeant Hancock was scheduled for trial by court-martial on the other charges in this case. Mrs. Hancock testified that she and Sergeant Hancock argued in the kitchen of their quarters. He pinned her against the refrigerator, then pushed her to the ground, struck her with his hands, and held her with his hands around her neck. He said if she had lied to him about her activities that night (as she had) he would "get her" or "kill her." When Sergeant Hancock left the house Mrs. Hancock took their two children to a neighbor's house and called the security police. Six photographs were admitted showing bruises and abrasions on Mrs. Hancock's face and neck resulting from this assault.

A motion for appropriate relief may be made to obtain a determination of multiplicity for sentencing purposes. R.C.M. 906(b)(12). Where two offenses are multiplicious for sentencing purposes, the maximum punishment shall be the maximum authorized punishment for the offense carrying the greatest maximum punishment. R.C.M. 1003(c)(1)(C). The standard for our review is whether the military judge abused his discretion. *United States v. Traeder,* 32 M.J. 455 (C.M.A.1991); *United States v. Austin,* 13 M.J. 759 (A.F.C.M.R. 1982).

Multiplicity for sentencing was not raised at trial in this case, but it is unclear whether failure to raise the issue at trial waives the issue on appellate review. *See Traeder,* 32 M.J. at 456 n. 2, in which the Court of Military Appeals considered the issue of multiplicity for sentencing even though it was not raised at trial, but found that failure to raise the issue at trial "is at the very least some indication of a lack of prejudice." *Cf. United States v. Everstone,* 26 M.J. 795, 796 (A.F.C.M.R.1988). We will assume *arguendo* the issue was

not waived in this case by failure to raise it at trial.

There is no reliable single test for multiplicity for sentencing. As our brothers on the Army Court of Military Review have said:

Although military legal purists may wince at the thought, it appears that our current military rules of multiplicity are a curious blend of military due process, equity, and policy considerations. Somehow, through this maze, our appellate courts, with the help of an overall enlightened "field" legal practice, are basically reaching fundamentally fair dispositions of multiplicity issues.

United States v. Barnum, 24 M.J. 729, 731 n. 3 (A.C.M.R.1987).

Various approaches have been taken to defining multiplicity for sentencing. The Court of Military Appeals has said that where separate societal norms are violated by different offenses they are not multiplicious for sentencing purposes even when they arise out of the same transaction. United States v. Beene, 4 U.S.C.M.A. 177, 15 C.M.R. 177 (1954) (drunk driving and resulting involuntary manslaughter were separately punishable). Another approach has been to decide multiplicity for sentencing on the basis of whether the offenses constituted a single integrated transaction generated by a single impulse. United States v. Baker, 14 M.J. 361 (C.M.A.1983); United States v. Burney, 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971); United States v. Crowe, 30 M.J. 1144 (A.F.C.M.R.1990), pet. denied, 32 M.J. 43 (C.M.A.1990). This test was sharply criticized in United States v. Traeder, 32 M.J. 455 (C.M.A.1991), but in United States v. Burks, 36 M.J. 447 (C.M.A.1993), the Court of Military Appeals found that the appellant's offenses were not multiplicious for sentencing because they did not arise "from a single impulse or insistent flow of events with like object or intent of the sort that this Court has sometimes treated as multiplicious for sentencing."

In United States v. Teters, 37 M.J. 370 (C.M.A.1993), the Court of Military Appeals reconsidered its decisions on multiplicity and held that, at least for findings purposes, multiplicity depends entirely on whether the offenses have separate elements, and therefore one is not a lesser included offense of the other. Since the military judge in Teters had found the offenses in question to be multiplicious for sentencing, the Court did not have that issue before it. The decision in Teters expressly overruled Baker, which was the principal authority for the "single impulse or insistent flow of events" test. It remains to be seen whether the "separate elements" test set out in Teters will be applied to issues of multiplicity for sentencing as well as for findings.

If the Teters "separate elements" test were applied here, it is clear we would find no multiplicity. The elements of assault consummated by a battery are (1) that the accused did bodily harm to another; and (2) that the bodily harm was done with unlawful force or violence. The elements of communicating a threat include (1) that the accused communicated a threat to wrongfully injure another, presently or in the future; (2) that the communication was made known to that person or to a third person; (3) that the communication was wrongful; and (4) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. None of these elements overlap, and neither offense is a lesser included offense of the other.

The same result would be reached if the "separate societal norms" test were applied. The interest of society in protecting persons from wrongful infliction of bodily harm is different from the societal interest in protecting them from being subjected to the continuing fear of wrongful death. See Crowe, 30 M.J. at 1146 (indecent acts with a child under 16, sodomy, and carnal knowledge violate separate societal norms). Cf. Baker, 14 M.J. at 370.

If we applied the "single impulse" and "insistent flow of events" tests, however, we would come out differently. The threat

and battery offenses were committed simultaneously and were motivated by the same anger, frustration, and jealousy. *See United States v. McCoy*, 32 M.J. 906 (A.F.C.M.R.1991); *United States v. Jobes*, 20 M.J. 506, 508–13 (A.F.C.M.R.1985), *pet. denied*, 21 M.J. 102 (C.M.A.1985); *United States v. Felton*, 31 M.J. 526, 529–30 (A.C.M.R.1990).

We conclude that, until the Court of Military Appeals indicates whether the "single impulse" and "insistent flow of events" tests remain valid measures of multiplicity for sentencing, we are bound to apply them. We must then examine the record of Sergeant Hancock's trial to determine whether he was prejudiced by the military judge's failure to rule *sua sponte* that the threat offense was multiplicious for sentencing with the related assault.

Communicating a threat carries a maximum authorized punishment including a dishonorable discharge and 3 years confinement. Assault consummated by a battery is a less serious offense, authorizing a maximum sentence including a bad conduct discharge and 6 months confinement. Since Sergeant Hancock was convicted of communicating a threat and seven specifications of assault consummated by a battery, the military judge instructed the members the maximum authorized confinement was 6½ years. If the military judge had *sua sponte* ruled that one battery was multiplicious for sentencing with the threat of-

fense, the maximum sentence to confinement would have been 6 years.

The members sentenced Sergeant Hancock to 20 months' confinement *and reduction to E–3*. Even if we assume the military judge erred by not ruling the two relevant offenses were multiplicious, we see no significant risk of prejudice to Sergeant Hancock.[3] The members appear to have sentenced Sergeant Hancock based upon his overall course of conduct, not on the basis of any mathematical formula applied to the maximum authorized punishment or to the number of offenses.[4] We conclude the members probably would not have voted for any different sentence if the military judge had told them to consider the threat and related assault as only one offense for sentencing, or that the maximum authorized confinement was 6 years instead of 6½ years.[5]

We have examined the findings, and we find them legally and factually correct. We have given individualized consideration to the appropriateness of the sentence, weighing the nature and seriousness of the offenses, the character and military performance of Sergeant Hancock, and all the circumstances documented in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982). We find the sentence, as adjudged and approved, is not inappropriate.

---

3. Our finding that there was no prejudice resulting from the absence of a finding of multiplicity removes this issue as a basis for arguing the accused was denied the effective assistance of counsel, since the *Strickland/Scott* test requires a showing both (1) that defense counsel erred, and (2) that the outcome would probably have been more favorable to the accused in the absence of that error. We therefore need not decide whether the failure of defense counsel to raise the issue of multiplicity for sentencing in the circumstances of this case constituted deficient performance.

4. We note that in the trial counsel's argument on sentencing he consistently said Sergeant Hancock was convicted of six assaults. In fact, he was found guilty of six specifications of assault consummated by a battery under the original charge and a seventh under an additional charge. There is therefore no factual

basis for any argument that the prosecution unfairly exploited the absence of a *sua sponte* multiplicity ruling by the military judge.

5. The perceptive reader will have noted we find the law to be unsettled as to (1) the extent to which failure of the defense to raise the issue of multiplicity for sentencing at trial will operate as a waiver of the issue on appellate review, and (2) the proper legal test for multiplicity for sentencing in the wake of *Traeder, Burks,* and *Teters*. It may be that, until the Court of Military Appeals definitively settles these issues, military judges can best handle the issue of multiplicity for sentencing by remaining alert to the issue and by exercising their broad discretion to "compress the cumulative sentence as the interests of justice require." *United States v. Wilson*, 35 M.J. 473, 475–76 n. 3 (C.M.A.1992); *United States v. Beaudin*, 35 M.J. 385, 388–89 (C.M.A. 1992) (Cox, J., concurring).

Accordingly, the approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judge SNYDER did not participate.

Judge JAMES concurs.