**UNITED STATES**

v.

**Staff Sergeant Andre LENOIR, FR422–90–2532 United States Air Force.**

**ACM 30198.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 29 May 1992.

Decided 16 Feb. 1994.

Appellate Counsel for the Appellant: Colonel Terry J. Woodhouse, Lieutenant Colonel Frank J. Spinner, and Captain Ursula P. Moul.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Captain Jane M.E. Peterson.

Before HEIMBURG, PEARSON, and SCHREIER, Appellate Military Judges.

OPINION OF THE COURT

PEARSON, Judge:

A military judge sitting as a general court-martial convicted Staff Sergeant Lenoir, in accordance with his pleas, of unlawfully entering Airman First Class AS' room and physically assaulting her, in violation of Articles 134 and 128, UCMJ, 10 U.S.C. §§ 928, 934, respectively, and, contrary to his plea, of maltreating female subordinate Staff Sergeant NH by sexual comments, gestures, and touching, in violation of Article 93, UCMJ, 10 U.S.C. § 893. The military judge sentenced Sergeant Lenoir to a bad-conduct discharge, 4 months confinement, and reduction to the grade of E–4, which the convening authority approved as adjudged.

On appeal, Sergeant Lenoir asserts the military judge erred in holding that the unlawful entry and assault were separate offenses for sentencing purposes. *See* R.C.M. 1003(c)(1)(C). Pursuant to a post-trial letter to appellate defense counsel, appellant also contends the military judge was biased and slept through part of the trial, his defense team was "unsatisfactory," and, by implication, the evidence was factually insufficient to convict him of maltreatment. *See United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We find no error and affirm.

## CUMULATIVE PUNISHMENTS?

Appellant contends the unlawful entry into Airman AS' room and subsequent assault consummated by a battery upon her were part of one transaction motivated by a single impulse. Thus, he argues, the maximum sentence calculation in his case should have included only the maximum punishment for the greater offense of the two, not both. *See* R.C.M. 1003(c)(1)(C), Discussion.

In reply, appellate government counsel concedes the reported case law does not answer the issue squarely. However, in an ably argued brief, appellate government counsel asserts we should apply the elements test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and consider the "long line of case law" holding that the greater offenses of burglary and housebreaking are separately punishable from the underlying offenses committed after the entry. We agree.

Congress authorized the President to establish sentence limits in military trials. Article 56, UCMJ, 10 U.S.C. § 856. In Rule for Courts–Martial 1003(c)(1)(C), the President prescribed the sentence limit when an accused is convicted of multiple offenses:

> When the accused is found guilty of two or more offenses, the maximum authorized punishment may be imposed for each separate offense. Except as provided in paragraph 5 of Part IV [Conspiracy], offenses are not separate if each does not require proof of an element not required to prove the other. If the offenses are not separate, the maximum punishment for those offenses shall be the maximum authorized

punishment for the offense carrying the greatest maximum punishment.

So the question is, are the offenses separate? If so, the appellant may be convicted of, and sentenced for both.

■ Multiple statutory violations for the same act or course of conduct allege separate offenses where each offense requires proof of an element not included in the other and Congress has not expressed a contrary legislative intent. *United States v. Teters*, 37 M.J. 370 (C.M.A.1993).

■ We conclude unlawful entry and assault consummated by a battery allege separate offenses. The two offenses contain different elements and one is not a lesser included offense of the other. In this regard, the unlawful entry is a completed offense once the entry is made. As for Congressional intent, we find it interpreted in the "long line of case law" to which government counsel refers. In proscribing unlawful entry, Congress was addressing the sanctity of one's dwelling, whereas, in proscribing the various forms of assault, Congress was addressing the sanctity of one's very person. *See United States v. Gibson*, 3 U.S.C.M.A. 746, 14 C.M.R. 164, 1954 WL 2109 (1954) (housebreaking and larceny are separate offenses); *United States v. Beaver*, 26 M.J. 991 (A.F.C.M.R.1988) (burglary and larceny are separate offenses); *United States v. Haltiwanger*, 50 C.M.R. 255 (A.F.C.M.R.1975) (housebreaking and larceny are separate offenses); *United States v. Rose*, 6 M.J. 754 (N.C.M.R.1978) (burglary, rape, and sodomy are separate offenses), *pet. denied*, 7 M.J. 56 (C.M.A.1979).

Consequently, we hold the offense of unlawful entry is separately punishable from an assault committed after the entry. R.C.M. 1003(c)(1)(C). Moreover, we find it hard to envision any situation where the offense of unlawful entry would not be separately punishable from any other offense committed after the entry. *But see United States v. Hancock*, 38 M.J. 672 (A.F.C.M.R.1993) (dictum as to separateness of assault consummated by a battery and communicating a threat, *see id.* 677 n. 5).

## MILITARY JUDGE'S CONDUCT

■ Appellant complains the military judge was biased in his rulings, fell asleep during the testimony of many witnesses, including appellant's testimony, and had decided on the outcome before trial. Appellant's complaints are based on wishful thinking rather than reality.

The military judge ruled in appellant's favor on several significant evidentiary issues and against appellant on others. In each instance, this experienced military judge gave a reasoned explanation for his decision. As this was a bench trial, the military judge also questioned many of the witnesses on both sides. The military judge's questions were always fair and impartial. As for the allegation of sleeping, the record is totally devoid of any such conduct. On the contrary, the record discloses the military judge was an active participant in the trial and accurately resolved numerous objections, including several concerning appellant's testimony.

As for prejudging the case, appellant was charged with housebreaking and assault with intent to commit rape. The military judge acquitted appellant of these offenses, convicting him instead of the lesser included offenses of unlawful entry and assault consummated by a battery, offenses to which he pleaded guilty. The remaining maltreatment offense was hotly litigated and boiled down to appellant's word against the victim's word. The military judge believed the victim—so do we.

## INEFFECTIVE ASSISTANCE
## OF COUNSEL ·

■ Appellant blames his two military lawyers for what he perceives was an unsuccessful outcome. In order to establish a claim of ineffective assistance, appellant must first show his counsel's conduct was deficient in some manner. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). Appellant has not met that threshold. In any event, we fail to find any deficiency after a close reading of the record. On the contrary, appellant's counsel appear to have pulled out all the stops in their defense. If winning always were the measure of a lawyer's effectiveness, we would be hard pressed to find any competent lawyers.

## CONCLUSION

Having weighed the evidence and made allowances for not having personally observed the witnesses, we are convinced of the legal and factual sufficiency of the evidence to support the military judge's findings of guilty. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). The findings and sentence are correct in law and fact, the sentence is not inappropriate, and no error prejudicial to the substantial rights of appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.

Judge SCHREIER concurs.

HEIMBURG, Senior Judge (concurring):

I agree completely with Judge Pearson's opinion, and write separately only to add further comments about the law of sentencing in multiple offense convictions.

It is entirely appropriate that the lead opinion speaks of "cumulative punishments" and avoids the unfortunate term "sentence multiplicity." A careful reading of Supreme Court precedents leads me to conclude there is only one stream of constitutional case law on multiplicity, not two. The law of multiplicity has its roots in the Double Jeopardy Clause of the Fifth Amendment ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"). At its very heart, multiplicity is about double *punishment* for the same offense. *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). While Supreme Court decisions have made this fact clear, our military precedents often have clouded the analysis by speaking of findings multiplicity and sentence multiplicity as if there were two distinct branches of the law of multiplicity. Even after *United States v. Teters,* 37 M.J. 370 (C.M.A.1993), which restored the military law of multiplicity to its senses by embracing the simple test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.

306 (1932), we are still foundering in the fog of prior military precedents and the unhelpful guidance in the Discussion to R.C.M. 1003(c)(1)(C). *See United States v. Hancock,* 38 M.J. 672 (A.F.C.M.R.1993).

Judge Pearson's opinion reminds us that the rules about multiplicity are case law rules, grounded in the Constitution. The rules on sentence limitation, on the other hand, are Presidential rules, grounded in the Article 56, UCMJ, 10 U.S.C. § 856, power to prescribe "limits" for punishment of UCMJ violations. While courts determine the boundaries of the former, they have no proper place in formulating the latter. The constitutional law of multiplicity sets the outer boundary of multiple punishments for offenses arising out of the same transaction. R.C.M. 1003(c)(1)(C), on the other hand, is the Presidentially-prescribed limitation on sentences when there is a conviction for multiple, related offenses. I do not believe R.C.M. 1003(c)(1)(C) limits punishments further than *Teters* and *Blockburger.*

R.C.M. 1003(c)(1)(C) purports to prescribe the maximum punishment for conviction of multiple offenses, but it uses the *Blockburger* test for multiplicity to determine that maximum. The reasoning is a complete circle: the maximum punishment prescribed in the Manual for Courts–Martial may be imposed for each "separate" offense, and, with minor limitations, an offense is "separate" if it meets the *Blockburger* separate elements test. Such a "limitation" is no limitation at all!

Our system, unlike typical civilian systems, provides for but one sentence for all offenses, rather than a separate sentence for each discrete offense. This feature of our system eliminates from sentence hearings the question, should the sentences run concurrently or consecutively? Stated another way: When should a court-martial accumulate maximum punishments for multiple offense convictions, and when should it not? As Judge Cox points out in his concurring opinion in *Teters,* 37 M.J. at 378–79, this question of accumulation of punishments is the relevant question for the military system post-*Teters.* (*See also* Judge Cox's concurring opinion in *United States v. Beaudin,* 35 M.J.

385, 388–89 (C.M.A.1992).) The military justice system needs the answer. I suggest it belongs in a revised R.C.M. 1003(c)(1)(C).