UNITED STATES, Appellee,

v.

Donnie G. FOSTER, Staff Sergeant, U.S. Air Force, Appellant.

No. 43159.
ACM S25375.

U. S. Court of Military Appeals.

Nov. 22, 1982.

For Appellant: *Colonel George R. Stevens* and *Captain J. Laurens Tullock* (on petition).

For Appellee: *Colonel James P. Porter* and *Major Michael J. Hoover* (on petition).

## OPINION OF THE COURT

COOK, Judge:

Pursuant to his pleas, the accused was convicted by special court-martial of threatening to kill an agent of the Office of Special Investigations, using and possessing marihuana, and attempting to sell a dangerous drug, in violation of Articles 80 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 934, respectively. The approved sentence extends to a bad-conduct discharge, confinement at hard labor for 6 months, forfeiture of $100.00 per month for 6 months, and reduction to the grade of airman basic (E–1). The United States Air Force Court of Military Review affirmed the findings and sentence. 12 M.J. 980 (1982).

We granted appellant's petition for grant of review on the following issue:

WHETHER THE ACCUSED'S PLEA OF GUILTY TO THE SPECIFICATION OF CHARGE II WAS IMPROVIDENT.

█ The accused was convicted pursuant to his plea, and we are, thus, limited in our consideration of the facts he related to the military judge during the providence inquiry. *United States v. Chambers,* 12 M.J. 443 (C.M.A.1982); *United States v. Joseph,* 11 M.J. 333 (C.M.A.1981). In determining whether his plea was provident, we must find that the specification alleges all the elements of the offense charged; that the accused pleaded guilty to that specification; that the providence inquiry established that the accused believed he was guilty; and, that the factual circumstances revealed by the accused objectively support his plea of guilty. *United States v. Chambers, supra; United States v. Davenport,* 9 M.J. 364 (C.M.A.1980); *United States v. Moglia,* 3 M.J. 216 (C.M.A.1977); Article 45, UCMJ, 10 U.S.C. § 845.

The particular specification at issue states, in pertinent part:

that ... [the accused] did, at Mini Mart, Del Range Road, Cheyenne, Wyoming, on or about 23 February 1981, attempt to sell a dangerous drug, to wit: Amphetamine, in violation of a lawful general regulation, to wit: paragraph 4-4, Air Force Regulation 30–2, dated 8 November 1976.

During the providence inquiry, the military judge delineated the elements pertaining to a violation of Article 80 as follows:[1]

MJ: So let's start off with this first element now, that on or about 23 February 1981, at Mini Mart, Del Range Road, Cheyenne, Wyoming, you aided and abetted in an attempt to sell amphetamines. Do you admit to that?

ACC: Yes sir, I do.

MJ: Element number two—that the act was done with the specific intent to commit the offense of violation of a general regulation which is a violation of Article 92 of the Uniform Code of Military Justice. Do you admit to that?

ACC: Yes sir, I do.

MJ: Element number three—that the act amounted to more than mere preparation; that is, it was a direct movement toward the commission of the offense. Do you admit to that?

ACC: Yes sir.

MJ: And fourth, that the act apparently tended to bring about the commission of the intended offense, a violation of a general regulation; that is, the act apparently would have resulted in the actual commission of the offense of violation of a general regulation, except for a circumstance unknown to you; that is, that the substance was not amphetamines.

ACC: Yes sir.

. . . . .

MJ: Very well, Now with regard to the intent that I mentioned above, Sergeant Foster, in the second element, I want you to understand that it is not necessary that you be thinking in terms of violating the general regulation at the time this took place, but it must be proved beyond a reasonable doubt that you specifically intended to commit the offense prohibited by the general regulation; that is, of course, to sell amphetamines. Do you admit to that?

ACC: Yes sir.

The military judge then set forth the elements of Article 92, UCMJ, 10 U.S.C. § 892, in relation to the Air Force regulation prohibiting the sale of marihuana. To this the accused responded:

ACC: Your honor, I didn't know there was such a regulation at the time.

MJ: Well, that's immaterial.

ACC: Yes sir, I do know there's a regulation there now.

MJ: And it was in effect on that date?

ACC: Yes sir.

MJ: Second, that you had a duty to obey such regulation?

1. The accused was charged and pleaded guilty on the theory of aiding and abetting the actual seller of the amphetamines. The military judge advised him of the elements of aiding and abetting and the accused agreed that he did aid and abet the sale.

ACC: Yes sir.

MJ: And third, that on or about 23 February 1981, at Mini Mart, Del Range Road, Cheyenne, Wyoming, you violated that regulation by selling amphetamines. Now again, on this element here, I'm asking you to assume that this would have been true had the substance, in fact, turned out to be amphetamines which, as we know, were not?

ACC: Yes sir.

The accused now contends "that to be guilty of *attempted* violation of a general regulation (as opposed to a violation of a general regulation), the accused must have actual knowledge of the regulation in issue." In support of this assertion, the accused cited the decision of the United States Navy Court of Military Review in *United States v. Silvas*, 11 M.J. 510 (N.C.M. R.1981). There, Silvas was charged with "violat[ing] a lawful general regulation, to wit: Article 1151, U.S. Navy Regulations, . . . by attempting to possess 0.399 grams, . . . of methamphetamine." *Id.* at 512. The Navy court found that the specification could be fairly construed to allege that

> appellant attempted to violate Article 92 in attempting to violate Article 1151, *U.S. Navy Regulations, 1973* by his attempt to possess 0.399 grams, more or less, of methamphetamine.

*Id.* at 513. However, under this construction, the Court found that:

> It thereby became necessary that the accused have the specific intent to violate the lawful general regulation; this required that the military judge explain intent to appellant and that appellant explain he in fact had knowledge of the lawful general order and he in fact had a duty to obey that order. In the absence of such an understanding by appellant,

the requisite specific intent could not exist.

*Id.* at 514.

In contrast, the United States Air Force Court of Military Review has specifically declined to follow the *Silvas* rationale. *See United States v. Davis*, 13 M.J. 593 (A.F.C. M.R.1982), *pet. granted*, 13 M.J. 483 (1982). Such a conflict between the service courts creates confusion and should be resolved.[2]

Article 80(a) defines an attempt as:

> An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.

The words *"done with specific intent"* cause the controversy here.

The history of the development of the law of attempts has not resulted in a clearly marked roadway. The difficulties in applying this hybrid offense to particular facts are well set out in *United States v. Thomas*, 13 U.S.C.M.A. 278, 32 C.M.R. 278 (1962). There, we noted that the language of the article clearly set forth five specific elements: an overt act, specific intent, more than mere preparation, tending to effect the commission of the offense, and failure to effect its commission. We quoted with approval from the article by Professor Sayre, entitled "Criminal Attempts," 41 Harv.L.Rev. 821, 858 (1928):

> There can be no criminal liability for an attempt without proof of a specific intent to effect the particular criminal consequence which constitutes the crime attempted. In other words, at least one of the defendant's objectives (of which there may be several) must constitute (*whether the defendant knows the law or not*) the crime attempted.

13 U.S.C.M.A. at 289, 32 C.M.R. at 289 (emphasis added).

---

2. The United States Navy Court of Military Review has seemingly retreated somewhat from *United States v. Silvas*, 11 M.J. 510 (N.C. M.R.1981). In *United States v. Corpac*, 11 M.J. 861 (N.M.C.M.R.1981), another panel held, under an apparently similar specification, that:

> Appellant's ignorance of the existence of the specific underlying regulation does not

> negate his generalized knowledge of the offense of which he is charged with attempting to violate. . . . We find that it is sufficient for appellant to know that his conduct, criminal in nature, was the subject of a proscription of law.

> *Id.* at 864.

In *Thomas,* we affirmed a finding of attempted rape where the evidence showed that the crime intended was impossible to consummate because the victim was dead. In *United States v. Dominguez,* 7 U.S.C. M.A. 485, 22 C.M.R. 275 (1957), we affirmed a conviction for attempted use of a narcotic drug under an instructional theory that the members could convict of an attempt if they found beyond a reasonable doubt that the accused intended to use a habit forming narcotic drug and did, in fact, use a substance which he intended and believed to be a narcotic drug, even if they were not satisfied beyond a reasonable doubt that the substance which he used was, in fact, a habit forming narcotic drug. We said:

██t is at once apparent that the question of whether the accused attempted to use a narcotic drug does not at all depend upon the true nature of the substance which he used intravenously. It is clear that he intended to commit the crime of using a habit-forming drug, that he did an overt act toward its commission, that the crime was apparently possible of commission in that the substance used seemed apparently adaptable to that end, and that the court-martial was entitled to have some doubts as to whether the white powder was a habit-forming narcotic drug.

*Id.* at 487, 22 C.M.R. at 277.

██ The underlying rationale of these opinions is that if the accused specifically intended to perform an act which is otherwise defined as a crime by the Uniform Code of Military Justice and takes steps toward the consummation of that intended result amounting to more than mere preparation, he is guilty of an attempt under Article 80. Thus, the "specific intent" which must be proved is the intent to commit the proscribed act. "There are no other elements to the offense." *United States v. Thomas, supra* at 286, 32 C.M.R. at 286.

██ Applying this rationale to the instant case, the specification alleges that the accused "attempt[ed] to sell a dangerous drug." The specific intent herein alleged is the intent to sell the drugs. The accused admitted his understanding of the criminality of the act of selling drugs. The military judge, however, somewhat confused the issue by instructing on the elements of Article 92 as it pertained to the violation of Air Force Regulation 30–2. For purposes of the accused's plea, it is immaterial whether he knew the sale violated any particular clause of any particular regulation.[3] In the same manner, it is immaterial whether a person charged with attempted murder knows the specific statute his conduct would violate so long as he is aware that his intended objective—murder—is an illegal act. The confusion surrounding these cases stems from the manner of charging the attempt. The attempted sale is the intended crime which is proscribed by Article 80, not the violation of the regulation which makes the sale illegal.

██ Here, the accused's attempted criminal act was thwarted solely by his principal's deviousness in substituting some other substance for the amphetamines expected to be sold. That incidental act is significant only in converting the accused's offense from an Article 92 to an Article 80 violation.

In sum, the specification alleged an offense and the accused's responses establish that he believed that he was guilty of the offense and establish objectively that he is, in fact, guilty.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

FLETCHER, Judge (concurring in the result):

I agree with my Brother Judges that appellant's representation that he did not know a general regulation prohibited the sale of amphetamines does not render his

---

**3.** "Under normal circumstances, such a regulation would be binding on the accused without proof of his knowledge of it." *United States v.* *Tolkach,* 14 M.J. 239, 240 (C.M.A.1982), and cases cited therein.

guilty plea improvident. *See* Perkins, *Criminal Law* 573-77 (2d ed. 1969); 1 Bishop, *A Treatise on Criminal Law* 526 (9th ed. 1923). Yet, I do not agree with their over-technical reading of the challenged specification or the importance they attach to its wording in this case. *See United States v. Snyder,* 1 U.S.C.M.A. 423, 429, 4 C.M.R. 15, 21 (1952). In this regard, I note that the sale of amphetamines is an offense under the code because such conduct violates a general regulation to which Congress has attached criminal sanctions. Article 92(1), Uniform Code of Military Justice, 10 U.S.C. § 892(1). *See United States v. Mowad,* 641 F.2d 1067, 1074 (2nd Cir. 1981), *cert. denied,* 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 86 (1981); *United States v. Gurrola-Garcia,* 547 F.2d 1075 (9th Cir. 1976). Similarly, the attempted sale of amphetamines is the intended crime proscribed by Article 80, UCMJ, 10 U.S.C. § 880, because it constitutes the attempted violation of a general regulation. Knowledge of the general regulation violated, unless required by the regulation itself, is in both situations irrelevant. *See generally United States v. Tinker,* 10 U.S.C.M.A. 292, 293, 27 C.M.R. 366, 367 (1959); Enker, *Mens Rea and Criminal Attempt,* American Bar Foundation Research Journal 845, 866–71 (1977).