UNITED STATES, Appellee,

v.

Leon K. JOHNSON, Staff Sergeant,
U.S. Army, Appellant.

No. 52,817.
CM 446422.

U.S. Court of Military Appeals.

Sept. 26, 1988.

For Appellant: *Captain Scott A. Hancock* (argued); *Lieutenant Colonel Paul J. Luedtke, Major Eric T. Franzen, Captain Annamary Sullivan* (on brief); *Colonel*

*Brooks B. LaGrua* and *Lieutenant Colonel William P. Heaston.*

For Appellee: *Captain Mark P. Sposato* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Larry D. Williams, Major Robert L. Swann* (on brief); *Colonel Norman G. Cooper* and *Lieutenant Colonel Gary F. Roberson.*

*Opinion of the Court*

EVERETT, Chief Judge:

A military judge sitting alone as a general court-martial tried Staff Sergeant Johnson on original charges that on June 19, 1984, he wrongfully possessed .091 grams of heroin (Art. 134) and two hypodermic syringes (Art. 92—contrary to U.S. Army Europe Reg. 632–10); on June 20, 1984, had malingered by trying to hang himself to avoid prosecution (Art. 115); and on additional charges that on July 4, 1984, he willfully disobeyed an order of a superior officer (Art. 90); unlawfully possessed five hypodermic syringes; wrongfully possessed and used heroin (alleged in the same specification); and malingered by injecting himself with heroin.[1] Pursuant to his pleas, appellant was found guilty as charged and was sentenced to a bad-conduct discharge, confinement for 18 months, total forfeitures, and reduction to the lowest enlisted grade.

According to a pretrial agreement, the convening authority reduced the term of confinement to 1 year but otherwise approved the sentence. The Court of Military Review affirmed the findings and sentence in a short-form opinion. We granted Johnson's petition for review to consider:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY NOT DISMISSING ADDITIONAL CHARGE IV (POSSESSION AND USE OF HEROIN ON 4 JULY 1984) AS MULTIPLICIOUS FOR FINDINGS WITH ADDITIONAL CHARGE III (INTENTIONAL SELF INJURY BY INJECTING HEROIN ON 4 JULY 1984).

II

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO ADEQUATELY ESTABLISH THE SPECIFIC INTENT ELEMENT DURING HIS INQUIRY INTO THE PROVIDENCE OF APPELLANT'S PLEA OF GUILTY TO CHARGE II AND ITS SPECIFICATION AND ADDITIONAL CHARGE III AND ITS SPECIFICATION.

We will consider these issues in reverse order.

I

In determining that appellant's guilty pleas were voluntary and factually accurate, the military judge relied on a stipulation of fact entered into by the parties and on Johnson's answers during the providence inquiry. According to those sources of information, appellant was apprehended on June 18, 1984, by German railway police near the railway station in Frankfurt, Federal Republic of Germany, for possessing heroin and the paraphernalia to use the drug. Johnson was released to the custody of the Army Criminal Investigation Command and was then taken "to the Darmstadt MP Station where he waited for a representative of his unit to pick him up." At about 5:30 a.m. on June 20, he was permitted to use the latrine in private; and thereupon, he obtained an electrical cord, made a noose, and attempted to hang himself from the water pipes. However, the cord would not support him, so he sustained only minor injuries.[2] After several days, Johnson was released to his unit.

---

1. The offenses were violations of the indicated Articles of the Uniform Code of Military Justice, 10 U.S.C. §§ 934, 892, 915, and 890, respectively.

2. During the providence inquiry, Johnson indicated that his "only injury" was that he "got knocked out and ... [his] leg was twitching a little bit." However, he then was in the hospital for 7 days for psychiatric evaluation.

On July 4, appellant left his unit in violation of an order given him by his commander. Again he went to the Frankfurt Railway Station, after he purchased some heroin. He then entered a latrine, locked the stall, prepared the heroin for use, and injected what he believed to be a lethal quantity. About 2:00 p.m., the German Railway Police found him "in an unconscious state." His injury consisted primarily of being rendered unconscious; and he was evaluated in the hospital for 9 days before being released.

During the plea inquiry, the military judge asked Sergeant Johnson why he had made the two attempts on his life. Johnson replied that he understood that he would be prosecuted for his offenses and that he intended to avoid trial. He elaborated somewhat by telling the military judge of his embarrassment at being arrested and relating his belief that he could not face his family after undergoing what he assumed would be a court-martial. He also specifically stated that he had attempted to inflict enough injury to prevent his appearance before any court-martial.

Several times during the providence inquiry, the military judge asked Sergeant Johnson about his motive for attempting suicide. To each of those inquiries appellant replied, either directly or otherwise, that he was attempting to avoid prosecution and its consequences. In addition, he stipulated in writing that he committed the acts with that intent.

## II

Appellant now argues that the plea inquiry did not establish the state of mind required to convict him of malingering. Instead, it merely showed that he was attempting to commit suicide, which he asserts is not a crime under the Uniform Code. In his view, the facts established during the providence inquiry make clear

that he was not guilty of any crime and that his guilty pleas to malingering were improvident as a matter of law.

■ Malingering is purely a military offense and is defined by Article 115 of the Code in this manner:

Any person subject to this chapter who for the purpose of avoiding work, duty, or service—

(1) feigns illness, physical disablement, mental lapse or derangement; or

(2) intentionally inflicts self-injury;

shall be punished as a court-martial may direct.

Johnson, of course, is being prosecuted for self-inflicted injury, rather than for a feigned illness or disability. To establish guilt, the Government must prove not only that appellant intentionally injured himself but also that he did so for a "purpose" prohibited by Article 115. *Cf. United States v. Mamaluy*, 10 U.S.C.M.A. 102, 104, 27 C.M.R. 176, 178 (1959).[3]

Usually attempts to commit suicide are not thought of in connection with malingering. Probably this is because malingering has often been a tactic employed to extend, rather than shorten, life expectancy—and especially so in a combat situation. However, we perceive nothing in the definition of malingering which precludes prosecution for attempted suicide if the "purpose" of the attempt is avoidance of "duty or service." Indeed, Congress would hardly have intended that a relatively minor self-injury would be punishable under Article 115 but that a much more serious injury would be immune from punishment if the accused not only wanted to avoid duty but also wanted to end his life.

■ Of course, many attempts to commit suicide are undertaken for the purpose of self-destruction, rather than for avoiding duty. Although the inevitable result of success in an attempted suicide will be ina-

---

**3.** Under 10 U.S.C. § 972, an enlisted member may be required to serve an additional day of active duty for each day lost as a result of illness "or injury resulting from his own misconduct." Thus, in addition to trial by court-martial, the Government has an administrative remedy for intentional self-injury. Moreover, it would appear that self-injury could constitute "misconduct" even though there was no specific "purpose of avoiding work, duty, or service."

bility to perform any further "work, duty, or service," the foreseeability of this outcome is not equivalent to a "purpose" within the meaning of Article 115. On the other hand, if death is sought for the very "purpose" of avoiding a specific duty, the state of mind required by Article 115 is present.

Each specification of malingering alleged that appellant intentionally injured himself "for the purpose of avoiding prosecution." Appellate defense counsel contend that "prosecution" is not "work, duty, or service." Although the word "prosecution" is hard to fit within one of these categories, we believe that—in the absence of any motion for clarification—this term is adequate to allege court appearance for purposes of investigation or trial.

In *Mamaluy*, we commented: "Loosely speaking, confinement in the brig may be the antithesis of military service, but a person apprehended for an offense has a duty to go there and remain until released by proper authority." 10 U.S.C.M.A. at 104, 27 C.M.R. at 178. Similarly, a servicemember who is facing charges has a duty to appear for pretrial and trial proceedings and must remain at court until released by competent authority. *See United States v. Guy*, 38 C.M.R. 694, 695 (N.B.R.1967). Accordingly, a purpose of avoiding trial by court-martial is a purpose of avoiding "duty or service" under Article 115; so the specifications are sufficient to state an offense.

■ Of course, at the time of the self-injury, no formal charges had been preferred against Johnson. However, under the particular circumstances here, the likelihood of charges being preferred and his being brought to trial was so great that appellant's "duty" to appear before a court-martial—or at least to appear before military authorities for further investigation of the alleged crimes—existed within the meaning of Article 115. The situation is analogous to that of a servicemember who anticipates that he will be sent out on a hazardous combat patrol and intentionally injures himself before he has actually received the order to report to his organization.

In *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980), we held that a plea of guilty is provident

■ if the specification alleges ... all elements of the offense ...;

■ if the accused pleads guilty to that specification; and

■ if the [plea] inquiry ... indicates not only that the accused himself believes he is guilty but also that the factual circumstances as revealed by the accused himself objectively support that plea ...

*Id.* at 367. *See also United States v. Foster*, 14 M.J. 246 (C.M.A.1982). Moreover, a stipulation of fact, when voluntarily entered into by an accused, may be utilized by a military judge in establishing the factual basis for the plea. *Cf. United States v. Moglia*, 3 M.J. 216 (C.M.A.1977). Johnson freely admitted all elements of the offense either in his colloquy with the military judge or in the stipulation which he voluntarily entered into. The military judge conducted the providence inquiry with care, and we conclude that the guilty pleas were properly accepted.

### III

The specification alleging malingering "by injecting some amount of Heroin into his right arm" on July 4 (spec., Add. Ch. III) parallels as to time and place the specification alleging wrongful possession and use of heroin on that date (spec., Add. Ch. IV). Johnson made clear during the providence inquiry and in the stipulation of fact that the overdose of heroin was the means by which he inflicted the self-injury. Thus, we must consider whether the malingering included the offense of wrongfully possessing and using the heroin on this same date. *United States v. Jones*, 23 M.J. 301, 303 (C.M.A.1987); *United States v. Baker*, 14 M.J. 361, 368 (C.M.A.1983); *see generally Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

The first step in making this determination is to examine the specifications to see if the charges stand in relationship of

greater to lesser as a matter of law or if one offense, *as pleaded*, fairly embraces the other. *See United States v. Holt*, 16 M.J. 393 (C.M.A.1983). Thus the liberal pleading permitted by military practice may create the requisite relationship between two otherwise facially unrelated crimes. *United States v. Baker, supra* at 368; *see also United States v. Duggan*, 4 U.S.C.M.A. 396, 400, 15 C.M.R. 396, 400 (1954).

■ The specification alleging malingering on July 4 states that Johnson did so "by injecting some amount of Heroin into his right arm." Absent any challenge to the specification, this language appears sufficient to allow a trier of fact to find appellant guilty of possession and use of heroin if the Government neglected to prove the remaining elements under Article 115. *Cf. United States v. Watkins*, 21 M.J. 208 (C.M.A.1986). Thus, in terms of pleading, the third offense appears to be included within the malingering specification. *Cf. United States v. Jones, supra.* Moreover, the stipulation and Johnson's answers during the providence inquiry established that he used heroin at the same time that he malingered and that the drug abuse was the means for inflicting self-injury.

■ To the extent that use of heroin was the means for accomplishing the malingering, the heroin offense is not entitled to stand alongside the malingering offense. *Cf. Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). Yet, the drug offense was alleged to have encompassed both possession and use. If an accused possesses a substantial quantity of heroin or some other drug and consumes a portion thereof for himself, he can be charged both with use of the drug and with possession of the balance of the drug that remains after his use of some of it. In the present case, however, there does not appear to have been any substantial remnant of the heroin after Johnson injected himself with the drug in his effort to commit suicide. Accordingly, there appears to be no reason to uphold the specification alleging

possession and use on July 4. *Cf. Ball v. United States, supra.*

■ For purposes of determining the maximum punishment, the military judge treated the use of the heroin on July 4 as inseparable from the malingering on that date. This ruling and other rulings favorable to the defense satisfy us that Johnson has suffered no prejudice as to sentence.

### IV

The decision of the United States Army Court of Military Review is reversed as to Additional Charge IV and its specification. The findings of guilty thereon are set aside and that Charge and its specification are dismissed. In all other respects, the decision below is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring in part and dissenting in part):

I agree with the majority opinion that appellant's attempted suicide for the purpose of avoiding court-martial and punishment is a sufficient basis for a charge of malingering. Ordinarily, of course, one does not think of invoking the criminal process in the case of an individual genuinely bent on self-destruction. "[T]he Code makes no provision for such an offense." *See United States v. Varraso*, 21 M.J. 129, 134 (C.M.A.1985), *cert. denied*, 475 U.S. 1124, 106 S.Ct. 1645, 90 L.Ed.2d 190 (1986).

With respect to the majority's dismissal of the specification of possession and use of heroin, I dissent. There appears to be no question that appellant's use of heroin was the "means" of his apparent attempted suicide. Ordinarily in a guilty-plea case, I would not go beyond assuring myself that appellant judicially admitted every element of the offenses. Thus generally, I would not adopt appellant's claim that his exclusive intention, at the time of the malingering episodes, was to avoid court-martial and punishment, as opposed to other military duties. However, it is abundantly clear here that the Government also bought into this theory and, indeed, premised its

prosecution thereon. Hence, for purposes of discussing multiplicity, I also accept the scenario. Nonetheless, I disagree that the use of heroin is multiplicious for findings with malingering.

A multiplicity "test" is only valid if it helps to achieve congressional intent. *Albernaz v. United States,* 450 U.S. 333, 340–43, 101 S.Ct. 1137, 1143–44, 67 L.Ed.2d 275 (1981). Usually Congress gives no indication, in enacting legislation, whether it intends that an act which offends several statutes be prosecuted on more than one theory.

As the Supreme Court noted in *Ball v. United States,* 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985):

This Court has consistently relied on the test of statutory construction stated in *Blockburger v. United States,* 284 U.S. 299, 304 [,52 S.Ct. 180, 182, 76 L.Ed. 306] (1932), to determine whether Congress intended the same conduct to be punishable under two criminal provisions. The appropriate inquiry under *Blockburger* is "whether each provision requires proof of a fact which the other does not." *See, e.g., United States v. Woodward,* [469 U.S. 105,] 107 [105 S.Ct. 611, 612, 83 L.Ed.2d 518] [1985]; *Albernaz v. United States,* 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 691–692, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980). The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes.

Ball, being a convicted felon, violated statutes which made it an offense to receive a weapon shipped in interstate commerce and to possess the same firearm. The Court concluded that "proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon." 470 U.S. at 862, 105 S.Ct. at 1672. In other words, the two statutes proscribed "the same offense."

In contrast, the majority here substitutes "act" for "offense." Use of an illegal drug and intentionally rendering oneself unfit for service are two entirely unrelated *offenses,* even though they may result from the same conduct. They are unrelated precisely because different facts must be proven to make each one out.

The Supreme Court has never adopted a "means" test or a "fairly embraced" test as used by the majority.* *Ball,* specifically, contains not one hint of endorsing a "means" test, and the Supreme Court has never suggested that pleading surplusage from one count or specification swallows up other offenses.

I believe the military judge here was entirely justified in treating these two offenses as multiplicious for sentencing (*i.e.,* concurrent punishment), but separate for findings. I would affirm the decision of the Court of Military Review.

---

* Further clarification of the Supreme Court's views may be forthcoming in the case of *Schmuck v. United States,* 87–6431, *cert. granted,* — U.S. —, 108 S.Ct. 1727, 100 L.Ed.2d 192 May 16, 1988, where one of the granted issues is summarized as:

Should defendant have been given jury instruction on odometer tampering, 15 USC 1984, as lesser included offense "inherently related" to charged offense of mail fraud, 18 USC 1341, where abundant references to defendant's odometer tampering may have influenced jury to convict him of mail fraud in weak case?

56 U.S.L.W. 3812 (1988).