UNITED STATES, Appellee,

v.

Barbara J. TETERS, Airman First Class
U.S. Air Force, Appellant.

No. 67,692.
CMR No. S28381.

U.S. Court of Military Appeals.

Argued Dec. 2, 1992.

Decided Aug. 12, 1993.

As amended Sept. 10, 1993.

For Appellant: *Captain Robert I. Smith* (argued); *Colonel Jeffrey R. Owens and Major Alice M. Kottmyer* (on brief); *Colonel Terry J. Woodhouse.*

For Appellee: *Captain Thomas E. Wand* (argued); *Lieutenant Colonel Brenda J. Hollis and Major Paul H. Blackwell, Jr.* (on brief); *Lieutenant Colonel Jeffery T. Infelise.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a special court-martial at Sheppard Air Force Base, Texas, on June 20, 1990. She pleaded guilty to a charge of larceny (4 specifications) and forgery (2 specifications), in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 USC §§ 921 and 923, respectively. The military judge sentenced her to a bad-conduct discharge, confinement and forfeiture of $400 pay per month for 3 months, and reduction to E–1. The convening authority approved this sentence on August 31, 1990. The Court of Military Review affirmed the approved findings and sentence on November 22, 1991, in an unpublished opinion.

On April 20, 1992, this Court granted review of the following issue:

> WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED WHEN IT RULED THAT SPECIFICATIONS 3 AND 4 OF CHARGE I, LARCENY OF MONEY BY USING FORGED CHECKS, WERE NOT MULTIPLICIOUS FOR FINDINGS WITH SPECIFICATIONS 1 AND 2 OF CHARGE II, FORGERY OF THE SAME CHECKS.

We hold that the Court of Military Review did not err when it found that appellant's convictions for forgery and larceny were not multiplicious for findings. *See Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *White v. United States*, 582 A.2d 774, 778–79 (D.C.App.1990). *See also Byrd v. United States*, 598 A.2d 386, 388–91 (D.C.App. 1991). *See generally United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

Appellant was charged, *inter alia*, with the following offenses:

CHARGE I: Violation of the UCMJ, Article 121

\* \* \*

Specification 3: In that [appellant] did, at or near Sheppard Air Force Base, Texas, while on active duty, *on or about 12 March 1990*, steal United States currency, of a value of about $300.00, the property of the Union Square Federal Credit Union.

Specification 4: In that [appellant] did, at or near Sheppard Air Force Base Texas, while on active duty, *between on or about 9 April 1990 and on or about 12 April 1990*, steal United States currency, of a value of about $200.00, the property of the Union Square Federal Credit Union.

CHARGE II: Violation of the UCMJ, Article 123

Specification 1: In that [appellant] did, at or near Sheppard Air Force Base, Texas, while on active duty, *on or about 12 March 1990, with intent to defraud, falsely make the signature of SSgt Shirley Jean Board to a certain check* in the following words, to wit: Shirley J. Board, which said writing would, if genuine, apparently operate to the legal harm of another.

Specification 2: In that [appellant] did, at or near Sheppard Air Force Base, Texas, while on active duty, *between on or about 9 April 1990 and on or about 12 April 1990, with intent to defraud, falsely make the signature of A1C Beverly Patricia Moncur to a certain check*

in the following words, to wit: Beverly P. Moncur, which said writing would, if genuine, apparently operate to the legal harm of another.

(Emphasis added.)

Prior to entry of pleas, defense counsel made several motions concerning these charges and specifications:

DC: At this time, your honor, the defense has two motions, the first motion I have marked as Appellate Exhibit III for identification; that is a motion to make Charge I, Specifications 3 and 4, and Charge II, Specifications 1 and 2 more definite and certain. *Its companion motion which I am making as Appellate Exhibit IV for identification is a motion to find Charge I, Specifications 3 and 4 multiplicious for sentencing purposes with Charge II, Specifications 1 and 2.* The motions have previously been given to the Government on the 16th of June at 1745. Copies have previously been made available to you and I am now tendering those two motions to you. The reason they are companion motions is that it is the defense's understanding that under *U.S. v. Baker,* the Specifications could be found multiplicious if they fairly embraced each other. Appellate courts have held that without a motion to find the specifications more definite and certain that the motion would be fatal at appeal if not raised at this level.

MJ: That is only from the records if there is some ambiguity as to the specifications, isn't that correct?

DC: Yes, sir. I would also like to note for the record that it is my understanding that the Government has no objection to the statement of facts on the motion for multiplicity.

ATC: That is correct, your honor.

DC: And the defense would stand on the motion.

MJ: Would the Government wish to respond at this time?

ATC: Yes, your honor, at this point the Government would present what has been marked as Appellate Exhibit V, which is the brief in response to the defense motion to make more definite and certain, and would present what has been marked as Appellate Exhibit VI which is the response brief to the motion by the defense as to multiplicity. At this time I tender the appellate exhibits to the military judge. Copies have previously been given to the defense counsel and the military judge.

The prosecution will stand on the motions.

MJ: With regard to the defense motion to make more definite and certain, I find that Specifications 1 and 2 of Charge II identify only one check involved in each Specification. The date in Specification 3 of Charge I is directly related to the date in Specification 1 of Charge II. The dates in Specification 4 of Charge I also match the dates alleged in Specification 2 of Charge II. The particular individuals who are involved are named in each Specification. Each Specification sets forth a clear and concise statement of the essential facts constituting the offense. Each Specification is sufficiently specific in informing the accused of the conduct charged. The Specifications are not misleading. They are also sufficiently specific to protect the accused from double jeopardy.

The defense motion is denied.

The ruling on the defense motion with regard to multiplicity, I will defer until just before entering findings.

(Emphasis added.)

Later, defense counsel again moved for appropriate relief because "Charge I, specifications 3 & 4 [were] multiplicious with Charge II, specifications 1 & 2 for both findings and sentencing purposes." The military judge found that the offenses were not multiplicious for findings but were multiplicious for sentencing. He ruled that these specifications "have separate elements and require different proof. Neither is a lesser included offense of the other. The forgery offenses were completed once the making with intent to defraud was accomplished."

---

Appellant argues that the specifications of forgery under Article 123 are multiplicious for findings purposes [1] with those for larceny under Article 121. *See United States v. Baker*, 14 MJ 361, 367–68 (CMA 1983). *See also Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). He premises his argument on the decision of this Court in *United States v. Johnson*, 26 MJ 415, 419 (CMA 1988), and its utilization of a "means" test for determining multiplicity for findings. Appellant defines this test as follows: "[W]here the offenses are part of what is substantially one transaction, and the individual acts which constitute the basis for different offenses were merely the means for effecting the ultimate offense, the individual charges or specifications cannot stand together." Final Brief at 4. He then avers that the facts of record in this case show that the forgery offenses were committed solely for the purpose of effectuating the larcenies and, therefore, only the larceny convictions can stand.

■ At the outset, we note that the constitutional power to define Federal civilian crimes and their punishments resides with the Congress of the United States. *See generally Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980). A similar constitutional power to define Federal military offenses and prescribe their punishments also lies with Congress. *Solorio v. United States*, 483 U.S. 435, 438, 107 S.Ct. 2924, 2926, 97 L.Ed.2d 364 (1987). *See United States v. Baker*, 14 MJ at 368 n.5. This power, of course, is limited by the Fifth Amendment prohibition against Double Jeopardy, although this limitation was once thought greater if the offenses were not prosecuted at a single trial but rather at successive trials. *Compare United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556, *with Grady v. Corbin*, 495 U.S. 508, 516–18, 110 S.Ct. 2084, 2090–92, 109 L.Ed.2d 548 (1990), which *Dixon* overruled. *See generally North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In either event, a constitutional violation under the Double Jeopardy Clause of the Constitution now occurs only if a court, *contrary to the intent of Congress*, imposes multiple convictions and punishments under different statutes for the same act or course of conduct. *See Ball v. United States*, 470 U.S. at 861, 105 S.Ct. at 1671; *Albernaz v. United States*, 450 U.S. 333, 343–44, 101 S.Ct. 1137, 1144–45, 67 L.Ed.2d 275 (1981).

Thus, the Double Jeopardy question raised in this case is whether Congress intended appellant at a single court-martial to be convicted of both forgery under Article 123 and larceny under Article 121. As noted earlier, however, appellant relies exclusively on the decision of this Court in *United States v. Johnson, supra*, and the so-called "means" test of multiplicity. In that case, this Court confronted a similar situation involving offenses of malingering under Article 115, UCMJ, 10 USC § 915, and possession and use of heroin under Article 134, UCMJ, 10 USC § 934. There,

---

1. The word "multiplicity" and the principles of law which it incorporates are not unique to military law. *See United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 224, 73 S.Ct. 227, 230, 97 L.Ed. 260 (1952). In Federal civilian courts " '[m]ultiplicity' is the charging of a single offense in several counts." *See* Wright, 1 Federal Practice and Procedure: Criminal 2d § 142 at 469 (1982). Professor Wright further notes:

> The vice of multiplicity is that it may lead to multiple sentences for the same offense, though for this there are remedies, and that "the prolix pleading may have some psychological effect upon a jury by suggesting to it

that defendant has committed not one but several crimes.
*Id.* at 475–76.

> *See generally* 8 Moore's Federal Practice ¶ 8.07 (2d ed. 1993). He also notes the decision of the Supreme Court in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), and its holding concerning multiple convictions. *See United States v. Burns*, 990 F.2d 1426, 1438–39 (4th Cir.1993). This three-step analysis of multiplicity in terms of charging, findings, and sentence was similarly recognized in the decision of this Court in *United States v. Baker*, 14 MJ 361 (CMA 1983). *See generally United States v. Dixon*, 921 F.2d 194, 196 (8th Cir.1990).

the pleadings of the malingering offense expressly alleged the drug offenses as the means for accomplishing the malingering, and the proof of the malingering offense established that as fact. Then–Chief Judge Everett writing for a majority of this Court set aside the drug-offense convictions on grounds of multiplicity. The Court concluded that the drug specifications were "fairly embraced" in the malingering specifications under the military law of lesser-included offenses. *See United States v. Holt*, 16 MJ 393 (CMA 1983); *United States v. Baker, supra* at 368; *see also United States v. Duggan*, 4 USCMA 396, 400, 15 CMR 396, 400 (1954).

An initial question raised in this context is whether our decision in *United States v. Johnson, supra*, is based on the Double Jeopardy Clause of the Fifth Amendment. If it is not so based, then the precise strictures of Supreme Court case law on Double Jeopardy (*i.e.*, the rule of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct.

180, 182, 76 L.Ed. 306 (1932)) may not apply to it. As noted above, *United States v. Johnson, supra*, relied on the "fairly embraced" doctrine of lesser-included offenses of *United States v. Baker, supra* 14 MJ at 368. It in turn construed Article 79, UCMJ, 10 USC § 879, in accordance with precedent of this Court, to require lesser-included offenses to be determined on the basis of the pleadings and proof of the greater offense. It also relied on precedent of this Court to authorize dismissal of lesser-included offenses so established. In sum, *United States v. Johnson, supra*, is based on the military definition of lesser-included offenses and the doctrine of merger. *See Hall v. United States*, 343 A.2d 35, 38–39 (D.C.App.1975).

More particularly, the "fairly embraced" test of *United States v. Baker, supra* at 368, was not predicated on the decision of the Supreme Court in *Blockburger v. United States, supra*.[2] *See United States v.*

---

**2.** The "fairly embraced" test focuses on the pleadings and proof of the greater offense to determine whether a second offense is a lesser-included offense as a matter of military law. Support for this approach is found in the legislative history of the Uniform Code of Military Justice, as follows:

ART. 59. Error of law; lesser included offense.

\* \* \*

(b) Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense.

\* \* \*

Subdivision (b) is taken from A. W. 47(f), 49(a) and article 39(d), (e) of the proposed A. G. N. MCM paragraph 78(c) defines a lesser included offense as follows:

*The test as to whether an offense found is necessarily included in that charged is that it is included only if it is necessary in proving the offense charged to prove all the elements of the offense found.*

Mr. Brooks. That subsection (b) means that if a man is tried for murder, and they find an error committed, the appellate court could still hold him or find him guilty of manslaughter?

Mr. Larkin. That is right.

\* \* \*

Mr. Philbin. . . . How about subsection (b), what is your reasoning on that?

Mr. Larkin. Well, that is to give the reviewing authorities latitude in the review of a case

where a man has been charged with let us say murder and he has been found guilty of it but the reviewing authority finds that one element of the crime of murder has not been proved but without that element a lesser included offense has been proved.

And while we do not in our punitive articles have degrees of crime in the sense of grand larceny in the first or second degree as you find in civil courts, the idea is analogous. For instance, in a grand larceny in the first degree charge, assuming you had one where one of the elements was that property exceeding $500 in value was taken and the man is convicted of it and the reviewing authority feels they made an error in the value and it was only $250 and they would be perfectly satisfied he was guilty of grand larceny in the second degree and not in the first, they could reduce the finding to a lesser included offense, just as the court can itself when it tries the case and finds the man guilty of a lesser included offense than the one he is charged with.

This extends that authority to the reviewing authorities, because several of them have a review of the facts as we will see.

Hearings on H.R. 2498 before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. [hereafter Hearings] 1174–75 (1949), *reprinted in* Index and Legislative History, Uniform Code of Military Justice (1950) (emphasis added).

The drafters of the Uniform Code did not reference the decision of the Supreme Court in

*Jones,* 23 MJ 301, 303 (CMA 1987). Admittedly, at one time it was an open question to some courts and scholars whether the *Blockburger* rule could be applied to the pleadings and proof at trial. *See United States v. Zubko,* 18 MJ 378, 382–83 n.6 (1984); *Edwards v. United States,* 583 A.2d 661, 669 (D.C.App.1990). *See generally* Blair, *Constitutional Limitations on the Lesser Included Offense Doctrine,* 21 Am.Crim.L.Rev. 445, 457–58 (Spring 1984). Moreover, the earlier decisions of this Court espoused a factual approach to *Blockburger.*[3] However, the Court in *United States v. Baker, supra,* did not adopt this view, which was later definitively rejected by the Supreme Court in *Grady v. Corbin,* 495 U.S. at 521 n.12, 110 S.Ct. at 2093 n. 12. *See generally United States v. Dixon,* —— U.S. at ——, 113 S.Ct. at 2851. *Cf. Byrd v. United States,* 598 A.2d at 390.[4]

The "fairly embraced" test of *United States v. Baker, supra,* instead, was expressly based on the doctrine of lesser-included offenses as provided in Article 79. *Id.* at 367, citing *United States v. Stegall,* 6 MJ 176, 178 (CMA 1979). A component of this doctrine is the concept or principle of merger which permits lesser-included offenses (even those determined to be lesser-included offenses on the basis of the pleadings and proof) to be subsumed into the greater offense for purposes of findings. *See Hall v. United States,* 343 A.2d 35, 38 and 39. The legal authority for dismissing such multiplicious findings can be traced to the decision of this Court in *United States v. Drexler,* 9 USCMA 405, 408, 26 CMR 185, 188 (1958). It in turn rested on a similar power to dismiss multiplicious counts found in Federal criminal courts (*see United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952)) and the general power of an appellate court to correct errors and insure justice. 9 USCMA at 408, 26 CMR at 188. *See generally Fuller v. United States,* 407 F.2d 1199, 1233 n.52 (D.C.Cir.1968)(en banc), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

■ In this regard, we note that the language of Article 79 is virtually identical to the language of Fed.R.Crim.P. 31(c).[5]

---

*Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), or utilize the so-called *Blockburger* statutory-elements language. Moreover, the cited Manual provision speaks in terms of the pleadings and proof. *See also* Harrington, *Multiplicity in the Military,* 134 Mil. L.Rev. 45, 84–85 (1991).

**3.** In *United States v. Baker,* 14 MJ 361, 367–68 (CMA 1983), this Court cited *United States v. Duggan,* 4 USCMA 396, 399–400, 15 CMR 396, 399–400 (1954), as authority for the "fairly embraced" test of lesser included offenses in military law. In *Duggan* this Court stated:

Accordingly, we must look to the allegations of the specification, and proof in support thereof, in each case to determine whether a lesser offense is placed in issue. While the standards we have adopted in considering whether one offense is included in another may be more generous than those prescribed by other courts, in an unbroken line of decisions we have made the test turn on both the charge and evidence.

4 USCMA at 399, 15 CMR at 399. Moreover, in *United States v. Beene,* 4 USCMA 177, 178, 15 CMR 177, 178 (1954), this Court expressly acknowledged in the multiple-convictions context that our approach to lesser-included offenses went beyond the strict elemental approach of *Blockburger v. United States, supra; see United*

*States v. Redenius,* 4 USCMA 161, 166–67, 15 CMR 161, 166–67 (1954).

**4.** It must be remembered that at the time *United States v. Baker, supra,* was decided, the Supreme Court had applied the *Blockburger* rule only to the multiple-punishments questions. *See Ball v. United States,* 470 U.S. 856, 105.,S.Ct. 1668, 84 L.Ed.2d 740 (1985). Accordingly, this Court, like the District of Columbia Court of Appeals (*see Hall v. United States,* 343 A.2d 35, 38–39 (1975)), did not consider itself bound by the *Blockburger* test in determining congressional intent on this related, but nonetheless distinct, question of multiple convictions. *See United States v. Parker,* 3 USCMA 541, 546–47, 13 CMR 97, 102–03 (1953); *United States v. Davis,* 2 USCMA 505, 508–09, 10 CMR 3, 6–7 (1953).

**5.** § 879. Art. 79. **Conviction of lesser included offense**

An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein.

Fed.R.Crim.P. 31(c) states:

(c) **Conviction of Less[er] Offense.** The defendant may be found guilty of an offense

We have consistently construed this statute and its "necessarily included" language to mean offenses which are included in the pleadings and proof of the greater offense. *See United States v. Baker, supra,* and cases cited therein. The Court of Appeals for the District of Columbia Circuit in *United States v. Whitaker,* 447 F.2d 314, 318–19 (D.C.Cir.1971), similarly construed Fed.R.Crim.P. 31(c) to permit determination of lesser-included offenses on the basis of the proof of the greater offense. *See also Hall v. United States,* 343 A.2d at 38–39. Nevertheless, in 1989, the Supreme Court, although, acknowledging divergent views by the Circuits on the scope of this Federal rule, definitively held that Fed.R.Crim.P. 31(c) should be construed to include only lesser-included offenses as established by their statutory elements. *Schmuck v. United States,* 489 U.S. at 716, 109 S.Ct. at 1450. In view of the identity of language of Article 79 and Fed.R.Crim.P. 31(c), we will apply the Supreme Court's more recent holding and abandon the "fairly embraced" test · for determining lesser-included offenses as a matter of military law.

■ In this light, we have reconsidered our decision in *United States v. Baker, supra,* and now conclude that the time has passed for a separate military-law doctrine to prevent multiplicious specifications. *See United States v. Johnson,* 26 MJ at 420 n.* (Cox, J., concurring in part and dissenting in part). As noted above, under the Supreme Court decision in *Schmuck,* this rule of multiplicity, like the *Blockburger* rule used in Double Jeopardy cases, would be limited to consideration of the statutory elements of the involved crimes. Moreover, in light of *Ball v. United States, supra,* and its inclusion of multiple convictions within the ambit of the protection of the Double Jeopardy Clause, the interests of justice no longer require such an unorthodox remedy for this vice. Finally, in light of the current practice in Federal courts, the assimilation of this relatively ancient doctrine of merger into the modern law of Double Jeopardy seems long overdue. *See United States v. Cavanaugh,* 948 F.2d 405, 412 n.7 (8th Cir.1991); *United States v. Belt,* 516 F.2d 873, 874 n.7 (8th Cir.1975).

Therefore, the question before us is one of Double Jeopardy, and it asks whether Congress intended appellant at a single court-martial to be convicted of both forgery under Article 123 and larceny under Article 121. *See United States v. Dixon, Ball v. United States,* and *Albernaz v. United States,* all *supra, see* 37 MJ at 373. In light of appellant's particular argument before this Court, this question may also be narrowed. We need only decide whether Congress intended that appellant be found guilty of both forgery and larceny at a single court-martial where the pleadings and proof establish that the forgery was the "means" for committing the larceny offense. We hold that Congress had such an intent. *Cf. Whalen v. United States, supra.*

■ Our initial inquiry in this regard is: How does Congress express its intent concerning multiple convictions at a single trial for different statutory violations arising from the same act or transaction? *See Albernaz v. United States,* 450 U.S. at 340, 101 S.Ct. at 1142–43; *see also Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). *See generally* 2A Sutherland Stat. Const. § 45.06–48.19 (5th ed.1992). It could do so expressly in the pertinent statute(s) violated or in their legislative histories. *See Garrett v. United States,* 471 U.S. 773, 778–79, 105 S.Ct. 2407, 2411–12, 85 L.Ed.2d 764 (1985); *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983). Absent such an overt expression of legislative intent, it can also be presumed or inferred based on the elements of the vio-

---

necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

The legislative history of Article 79 indicates that the military statute was patterned on the Federal rule. Hearings, *supra* at 1224.

lated statutes and their relationship to each other. *See United States v. Dixon, supra; Blockburger v. United States,* 284 U.S. at 304, 52 S.Ct. at 182. Finally, other recognized guidelines for discerning congressional intent may then be considered to determine whether the above presumption of separateness is overcome by clear indications of a contrary legislative intent. *Ball v. United States,* 470 U.S. at 862–65, 105 S.Ct. at 1672–74; *United States v. Woodward,* 469 U.S. 105, 109, 105 S.Ct. 611, 612–13, 83 L.Ed.2d 518 (1985); *Missouri v. Hunter,* 459 U.S. at 366–67, 103 S.Ct. at 678–79; *Albernaz v. United States,* 450 U.S. at 340–42, 101 S.Ct. at 1143–44; *Whalen v. United States,* 445 U.S. at 693–95, 100 S.Ct. at 1438–40. *See also Garrett v. United States,* 471 U.S. at 779, 105 S.Ct. at 2411.[6]

Turning first to the particular statutes involved in this case, we note that Congress has not expressly provided for multiple convictions and punishments where a forgery is committed as the means of accomplishing a larceny. On the other hand, neither Article 121 nor Article 123 expressly prohibits multiple convictions and punishments in these circumstances. Finally, neither of these statutes articulates a "means" test for deciding these questions in individual cases. As in most situations, the statutes are silent on this matter.

Turning next to the legislative histories of these statutes, we find no mention of the problem of multiple convictions or punishments, or any direction to employ a "means" test. On the other hand, we also find no statements in the legislative histories of these provisions prohibiting use of such a test. Again, as in most cases, the legislative history of the violated statute or statutes is silent.

▮ In these circumstances, the Supreme Court has indicated that the rule of construction found in *Blockburger v. United States, supra,* is appropriate to discern congressional intent. That rule is as follows:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. *See Albernaz v. United States,* 450 U.S. at 341–42, 101 S.Ct. at 1143–44. It is now unquestionably established that this test is to be applied to the elements of the statutes violated and not to the pleadings or proof of these offenses. *United States v. Dixon, supra,* — U.S. at —, 113 S.Ct. at 2851; *Grady v. Corbin,* 495 U.S. at 521 n.12, 110 S.Ct. at 2093 n.12. *Cf. Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). *See generally Byrd v. United States,* 598 A.2d at 390 n.7.

▮ Turning to the present case, Article 121, prohibiting larceny, requires as an element a wrongful taking, obtaining, or withholding "by any means" of "money, personal property, or article of value." Article 123, prohibiting forgery, does not contain a taking element. Instead, it requires the false making or altering of any signature on any writing which, "if genuine, apparently impose[s] a legal liability on another or change[s] his legal right or liability to his prejudice." Article 121 requires no such signature. Thus, the *Blockburger* rule is clearly satisfied in this case, and separate offenses warranting separate con-

---

**6.** These cases have also been construed to preclude utilization of the *Blockburger* rule where Congress has expressly or impliedly indicated its intent on multiple conviction and punishment issues. *See United States v. Martinez-Torres,* 556 F.Supp. 1255, 1266–67 (S.D. N.Y. 1983), *aff'd on other grounds* 722 F.2d 1019 (2d Cir.1983).

In our view the order of analysis is not outcome determinative. When there is conflict between application of the *Blockburger* rule and some other rule of construction for determining implied legislative intent, the rule of lenity applies. *Whalen v. United States,* 445 U.S. 684, 694, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980). Moreover, if Congress has expressly indicated an intent contrary to the *Blockburger* rule, congressional intent controls. *See Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983).

victions and punishment can be presumed to be Congress' intent. *See United States v. McMillian*, 33 MJ 257 (CMA 1991).

Moreover, we do not read the Supreme Court decision in *Whalen v. United States, supra*, as authorizing a congressionally intended exception to the *Blockburger* rule where such a separate elemental offense is nonetheless evidenced as the means of committing the other. 445 U.S. at 694 n.8, 100 S.Ct. at 1439 n.8. There, the Supreme Court found that felony murder and the underlying felony (rape) were not the same offense under a strict elemental application of the *Blockburger* rule. However, it eschewed this application of the *Blockburger* rule in the compound-and-predicate-offense situation and concluded that only one punishment was intended by Congress in these circumstances. *See also Jones v. Thomas*, 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989). This conclusion, however, was not based on the pleadings-and-proof "means" test posited by appellant in this case. Instead, it was based on the statutory elements of the compound-and-predicate offenses and the Supreme Court's doubt as to the suitability of strictly applying the *Blockburger* rule in this unique statutory context. 445 U.S. at 695 n.10, 100 S.Ct. at 1439 n.10.

The final step to determine constitutionally separate offenses is to determine whether there are any other indications of contrary intent on Congress' part which can overcome the *Blockburger* presumption of separateness. *See Missouri v. Hunter*, 459 U.S. at 366–67, 103 S.Ct. at 678–79. Appellant might argue that Article 79 clearly reflects Congress' intent to reject the *Blockburger* presumption of separateness where pleadings and proof showed one offense was included in another. However, as explained above, our "fairly embraced" approach to Article 79 does not survive the 1989 decision of the

Supreme Court in *Schmuck v. United States, supra*. *See Byrd v. United States*, 598 A.2d at 390 n.9. Since appellant's trial occurred in 1990, he could not rely on Article 79 as a clear expression of congressional intent contrary to the *Blockburger* rule.

In summary, we hold that appellant has failed to show that Congress expressly provided in Articles 121 and 123 or their legislative histories that multiple convictions are not authorized in this case. In addition, she has failed to show that application of the *Blockburger* rule to these statutes presumptively precludes separate convictions for forgery and larceny. Finally, she has failed to establish any indication of a contrary intent on Congress' part to overcome the *Blockburger* presumption that forgery and larceny are separate offenses for purposes of findings. Accordingly, we hold that separate convictions for forgery and larceny are authorized by Congress. *See also White v. United States*, 582 A.2d at 779.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges CRAWFORD, GIERKE, and WISS concur.

COX, Judge (concurring):

With apologies to the great bard, I join the Court in burying *United States v. Baker*, 14 MJ 361 (CMA 1983), and its progeny, but not in praising or justifying them. This is not, however, the day to catalog the flaws of those opinions. Rightly does the majority opinion acknowledge that "the constitutional power to define Federal civilian crimes and their punishments resides with the Congress of the United States." 37 MJ at 373. And amen! *United States v. Wilson*, 35 MJ 473, 475 n.3 (CMA 1992); *see also United States v. Boyle*, 36 MJ 326, 328 (CMA 1993) (Crawford, J., concurring in the result).*

---

* The majority opinion vindicates the view of Judge Cook in opposing the *Baker* train, with respect to findings. *United States v. Baker*, 14 MJ 361 (CMA 1983). He, at least, believed that *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *American*

*Tobacco Co. v. United States*, 328 U.S. 781, 788, 66 S.Ct. 1125, 1128, 90 L.Ed. 1575 (1946); *Gore v. United States*, 357 U.S. 386, 389, 78 S.Ct. 1280, 1282, 2 L.Ed.2d 1405 (1958); *Iannelli v. United States*, 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 1293 n.17, 43 L.Ed.2d 616 (1975); *Brown v.*

With *Baker, et al.*, behind us, hopefully the courts and the services, and perhaps even the President or Congress, can now direct some attention to what I consider a legitimate issue, namely the sentencing of servicemembers convicted of multiple offenses. I averted to this problem in my separate opinion in *United States v. Beaudin*, 35 MJ 385, 388–89 (CMA 1992). My point there was not to advocate a system of sentencing guidelines for the military, but to note merely the United States Sentencing Commission's more rational approach to sentencing in the multiple-offense arena. It is the all-or-nothing, sentence-multiplier consequence of the multiplicity conclusion, primarily, that has fueled this internecine conflict all these years. It would be nice to see the matter rationally resolved at long last.

*Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); and *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981), were the law, and I trust he would have had no difficulty understanding *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), and *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). *See, e.g., United States v. Baker, supra* 14 MJ at 371 (Cook, J., dissenting); *United States v. Zupancic*, 18 MJ 387, 391 (CMA 1984) (Cook, S.J., concurring in part and dissenting in part).